[S. F. No. 13466.  In Bank.—August 28, 1931.]

CARRIER & BRADDOCK, INC. (a Corporation), Appellant, v. S. W. STRAUS & COMPANY, INC. (a Corporation), Respondent.

Knight, Boland & Christin for Appellant.

Leslie C. Rogers, J. M. Mannon, Jr., and McCutchen, Olney, Mannon & Greene for Respondent.

PRESTON, J.—The judgment of nonsuit herein is affirmed. Two of the many reasons which seem to justify the action of the court below will be found in the brief narrative following:

The action is by plaintiff corporation, an insurance broker, for damages by way of loss of prospective profits in the form of commissions which were to accrue over a period of fifteen years, lost to it because of the failure of defendant corporation to place through it the insurance on apartment house and hotel structures under its control during said period of time.

Plaintiff, at all times herein prior to July 1, 1924, was a licensed insurance broker, but after said date it did not secure such license. It was a one-man corporation, being the *alter ego* of one Craig Carrier. Defendant corporation was engaged extensively in the business of underwriting and marketing mortgage bond securities, floated principally for the building and construction of apartment houses, hotels and office buildings and it was extensively engaged in such business on the Pacific Coast. But to protect the security behind the bond issues it was sponsoring, defendant controlled the amount and classes of insurance in force upon the structure both during the construction period and thereafter during the period representing the life of the bond issue, which was usually about fifteen years. Defendant apparently

also had an insurance department of its own but frequently in insurance matters dealt through other brokers, requiring such brokers, however, to surrender to it one-half of the commissions customarily received on such insurance business.

On October 25, 1921, plaintiff wrote defendant soliciting "fidelity and surety insurance" on a "reciprocity basis" and concluded by soliciting authority to act as defendant's "insurance brokers", stating it "would place buying and selling orders for securities" with it. This letter brought a visit from a representative of defendant and evidently the parties reached some understanding respecting the insurance on a contemplated apartment house building to be erected at the southeast corner of Powell and Sacramento Streets, San Francisco, and to be known as the Francesca Building. This is evidenced by a letter of November 10th in which plaintiff wrote defendant confirming the arrangement as covering the fire, compensation, liability and surety bond insurance. In this letter appeared the following: "In consideration of our handling this insurance as the owner's or your brokers the writer hereby places an order with you for $5,000.00 of your 7% bonds; long maturities are preferable and at an early date the particular bond and maturity will be arranged."

On November 14, 1921, defendant replied to this letter, making no dissent from its terms except to say that it had its own insurance department: "We, however, will divide the regular commissions due us for the placing of this business, with your firm, which is the basis we use in the placing of all of our insurance on the Pacific Coast." During the period between this time and the fall of 1924, plaintiff and defendant did some brokerage business together and plaintiff's commissions were $5,953.88, half of which it gave to a person designated by defendant. During this period also plaintiff subscribed to bond issues being marketed by defendant to the extent of some $65,000 and instigated purchases of such issues by others to the extent of $24,000. It is clear that during this period of time defendant was not allowing plaintiff to place the insurance on all the buildings it was financing or, indeed, all the kinds of insurance on any one building at all. However, on August 12, 1924, it became evident that a disagreement was about to arise concerning the arrangement

between the parties. On August 21, 1924, plaintiff undertook to put its oral understanding with defendant into the form of a letter, the important clause of which was as follows:

"It is that we were, and are, to have the complete insurance both during the construction, and for the life of the bonds after completion, on some building financed by you over which you have the control of the insurance (on building equivalent to Francesca Apartment Building and in proportion to less or more expensive building) for every $5,000.00 of bonds purchased by us or through our influence (with the exception of the Senator Hotel, on which a special arrangement was made) we, in turn, to pay to you one-half of the regular commission."

Defendant repudiated this claim at once. This suit followed in which the existence of such an understanding was put in direct issue. The essence of plaintiff's claim is that said bond purchases authorized it to place the insurance on sixteen existing or future buildings yielding commissions during fifteen years, equivalent in amount to those that might be yielded to the brokers who handled the placing of insurance on the Francesca Building. Plaintiff for some reason did not even handle that business for defendant nor purchase the specified bonds. The damages arrived at in this highly uncertain, hearsay and speculative manner were to be the sum of $155,000, one-half of which sum was made the prayer of the complaint. The answer denied plaintiff's claims *in toto* as to the contract and plead the absence in defendant of a license to act as a broker, setting up also the statute of limitations and finally offering to repurchase at cost all bonds purchased by plaintiff or at his instigation.

The case went to trial. Plaintiff's evidence consisted largely of his own testimony. He testified to the existence of an understanding in all respects similar to that claimed in the letter above quoted. At the conclusion of his evidence, defendant moved for a nonsuit upon a variety of grounds. This motion was granted and a formal judgment was entered. Plaintiff has appealed therefrom.

It will be noted at the outset that the so-called reciprocity agreement contended for by plaintiff rests entirely in parol.

The writings passing between the parties related only to certain specific structures and dealt not at all with any general understanding between them. If it be assumed that the contract was in existence between the parties, a breach thereof did not occur until August, 1924. It has been noted above, however, that on July 1, 1924, plaintiff ceased to be a licensed insurance broker under the laws of this state and was not such broker at the times herein involved subsequent to said date.

It is the contention of defendant that the contract is too vague and uncertain to be enforceable. As we understand it, plaintiff's testimony, giving it the most favorable construction allowable, is that for each $5,000 purchase of bonds through defendant, defendant was to give to it the placing of insurance of all classes on some structure, which insurance would yield substantially the equivalent in commissions to the insurance carried by said Francesca Apartments, on which structure a bond issue of some $500,000 was placed, the period of harvest to be fifteen years. It must be evident that such a contract is vague and speculative and also that the existence of such a contract taxes greatly human credulity—that the mere subscription to a one one-hundredth part of a bond issue, presumably worth and marketable at par, could bring about such far-reaching and comprehensive privileges with such continuing emoluments.

We do not feel called upon, however, to dwell upon this contention for defendant urges that inasmuch as the contract by its very nature was not to be performed within one year and inasmuch as plaintiff's duties thereunder were not to be performed within one year, the statute of frauds comes into operation and renders such an agreement, if admitted to exist, unenforceable. The reply made to this contention is that all plaintiff had to do was to subscribe for bonds to the extent of $5,000 for any one issue and its duty in that respect was thereby performed; hence the statute of frauds would not operate.

It is clear, however, that the insurance required by defendant during construction and thereafter during the life of the bond issue was of various types, such as fire, earthquake, boiler, plate glass, elevator, workmen's compensation, public liability, property damage, surety bonds, fidelity

bonds, etc. The period of the bond issue being for approximately fifteen years, it is clear that with respect to renewals, changes in rate and other matters relating to such insurance, the active, constant attention during the whole period on the part of plaintiff, in order to earn its compensation, was required. In other words, it is too clear for controversy that plaintiff did not, by its mere subscription to the bond securities, end its duties to the defendant and the statute of frauds does apply (sec. 1624, subd. 1, Civ. Code). This section provides that ''an agreement that by its terms is not to be performed within a year from the making thereof'' is invalid unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged, or by his agent. It is apparent also that the contract, by its terms, was to be a continuing one and could not from the nature of the subject matter have been performed within one year. For this reason also it is within the statute of frauds.

█ The objection that raising the question of the statute of frauds for the first time on the motion for nonsuit came too late, cannot be allowed. The point could have been raised by a motion to strike after the reception of the evidence. (*Hanley* v. *Murphy*, 70 Cal. App. 157 [232 Pac. 767].) The cause was in no different condition when the motion for nonsuit was made. If plaintiff was embarrassed in any way by the delay in the making of the point, it could have sought a reopening of its case. But nothing is urged to show such prejudice or that it was denied the privilege of reopening the cause.

█ We think it is equally clear that when plaintiff prior to any breach of the contract and on July 1, 1924, ceased to become a licensed broker, it thereby placed itself where it could not insist upon performance of the contract by defendant. This follows from the observations made above, for if its services were required during the full period of the mortgage upon the property, it should have maintained itself in a position to carry out its duties and its failure or neglect to maintain such status estops it to claim a breach of the contract on the part of defendant and, moreover, would prevent the collection of commissions on insurance placed subsequent to said date.

█

We are satisfied to rest our views upon the matters above set forth without entering into further discussion.

Langdon, J., Seawell, J., Curtis, J., and Waste, C. J., concurred.

Rehearing denied.