[Civ. No. 24141.   Second Dist., Div. One.   May 4, 1960.]

IRA GARSON REALTY COMPANY (a Corporation), Appellant, v. SIDNEY BROWN et al., Respondents.

618

Robert N. Richland and Kenneth I. Persion for Appellant.

Swerdlow, Glikbarg & Nicholas, Harry B. Swerdlow and Irving A. Shimer for Respondents.

LILLIE, J.—Plaintiff sued defendants, owners of certain property, for recovery of a $7,500 real estate broker's commission, relying in its first cause of action on an alleged oral agreement supported by a written memorandum in the form of escrow instructions, and in the second as a third party beneficiary on a written agreement (escrow instructions). The trial court, hearing the matter without a jury, rendered judgment for defendants.

Viewing the evidence most favorably in support of the trial court's findings (*Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689]; *Brewer* v. *Simpson*, 53 Cal.2d 567 [2 Cal.Rptr. 609, 349 P.2d 289]), the following is a résumé of the events leading up to the controversy.

Defendants had put on the market for sale certain real property which various brokers were attempting to sell. Not previously known to defendants, plaintiff realty company, through Ira Garson, on January 29, 1957, telephoned defendant Brown at his home, told him he knew the property was on the market and other brokers were working on it, and inquired if he would give him authority to sell it on a nonexclusive basis. After discussing its description and the price, Brown said he would sell it for $285,000 net to him; but Garson told him that his organization "never takes a net listing"

as it is against its policy and asked: "(P)lease give me a price on which you can pay me a full realty board commission of 5%." Brown then responded: "Get me $300,000, and I will pay a 5% commission on the total."

On March 30, 1957, Oscar Stahl, with whom Garson had previously done business and from whom he had received a commission on another transaction the year before, offered $292,500 for the property. Not believing a price under $300,-000 would be accepted by Brown, Garson told Stahl, who then agreed to give Garson an exclusive listing to lease the property when the existing lease expired for the loss on commission Garson would take on the reduced price. Garson decided "in order to make the deal" and "to continue a very favorable relationship with a very good buyer and potentially a remunerative situation" to submit the $292,500 offer and accept a reduced commission. However, when he presented the $292,-500 offer to Brown, he nevertheless demanded a full 5 per cent commission thereon. Brown refused to pay him a "5% commission on this price." Garson then told Brown he would reduce his commission to $7,500 but did not disclose to him his arrangement with Stahl to handle the exclusive listing to lease the property for him later on, and presented to Brown a deposit receipt (Ex. 3) and a $10,000 deposit. Brown refused to accept the acceptance portion of the deposit receipt or sign the same; but he did tell Garson "as soon as the escrow will be completed he (you) will get $7,500 out of escrow."

Defendants' attorney prepared the escrow instructions (Ex. 7) based upon conversations and communications between counsel for Stahl and defendants. They were dated and signed by Stahl and defendants April 24, 1957, and Stahl deposited $10,000 in escrow. The escrow instructions declared: "Sellers assume liability for payment of a broker's commission to the Ira Garson Realty Co. in the sum of $7,500"; and provided for a total price of $292,500, issuance to the buyer of a policy of title insurance and approval by him of a preliminary title report, and that time is of the essence and if the escrow is not in condition to close by May 10, 1957, any party may cancel the escrow and demand return of money or property.

On April 26, 1957, plaintiff prepared and presented to Stahl a proposed amendment to the escrow instructions extending the escrow 10 days to May 20th, because it felt that the May 10th date was "inadequate to run a complete coverage policy." Several days after April 26th, Garson orally advised Stahl that he did not think the escrow could be consummated by

May 10th; but Stahl refused to sign the amendment and advised him that if the escrow was not closed by May 10th he would withdraw therefrom. Plaintiff submitted the proposed amendment extending time to defendants which they signed; they were not then advised Stahl refused to do so.

A survey was required in connection with the extended coverage title insurance policy. Garson undertook to obtain the same and place it in escrow and was authorized by defendants' counsel to have it made. However, it was not until May 7th that plaintiff ordered the survey; and it delivered the same to the escrow holder on May 10th, the date the escrow should have closed. The escrow was not in condition to, and did not, close on Friday, May 10th, and on Monday, May 13th, Stahl delivered to the escrow holder his letter demanding cancellation of the escrow and the return of the $10,000 deposit (Ex. G), a copy of which letter was immediately sent by the escrow holder to defendants' attorney. Defendants replied on May 14, 1957, objecting to any cancellation of the escrow (Ex. 12). In an abundance of caution, the escrow holder on June 4 transmitted to Stahl and defendants the preliminary title report. Stahl's attorney on June 7th acknowledged receipt of the same.

Both before and after May 13th, Garson advised Stahl he was willing to release him from the escrow, but it was defendants who were refusing to permit him to withdraw. No money was returned to Stahl until July 1, when defendants and Stahl determined the amount to be returned and instructed the escrow holder accordingly. Subsequent to June 18, 1957, defendants sold the property to another for $310,000, $15,000 of which was paid as a broker's commission and $10,000 to the lessee to induce him to vacate the premises, defendants receiving $285,000.

Anticipating under the Statute of Frauds a defense to the enforcement of the alleged oral agreement of plaintiff's employment and payment of the commission, appellant contends that respondents waived the defense and are now precluded from raising the issue for their failure to do so in the trial court by way of answer, pretrial statement, objection or proper motion to strike all oral testimony relative thereto; and argues that even if the oral agreement falls within the statute, the escrow instructions constituted a sufficient written memorandum to satisfy the requirements of the statute.

Although plaintiff in its first cause of action pleaded an

oral agreement of January 29, 1957, supported by a written memorandum in the form of escrow instructions, and relied upon the same for recovery in pretrial and offered evidence thereon in the presentation of its case, it is apparent from the record before us that on defendants' motion for nonsuit, thereafter and now, plaintiff abandoned reliance upon the written memorandum, standing solely upon the alleged oral agreement. This change in position is reflected in plaintiff's defense to the motion for nonsuit, its argument at the close of the trial, and its opening brief in this court (pps. 4, 5, 6, 29).

Obviously, defendants could not have raised the issue of the bar of the statute of frauds on demurrer inasmuch as the complaint on its face alleged an oral agreement supported by a written memorandum.  ■■ However, in their answer, defendants "denied the making of the contract in toto and that has been held sufficient to justify reliance on the statute of frauds (23 Cal.Jur.2d, Frauds, Statute of, § 150, p. 440, citing *Feeney* v. *Howard,* 79 Cal. 525 [21 P. 984, 12 Am.St.Rep. 162, 4 L.R.A. 826] ; *Harris* v. *Frank,* 81 Cal. 280 [22 P. 856] ; and *Walsh* v. *Standart,* 174 Cal. 807 [164 P. 795])." (*San Francisco Brewing Corp.* v. *Bowman,* 52 Cal.2d 607, 618 [343 P.2d 1].)  ■■ Plaintiff relied upon the alleged oral agreement supported by a written memorandum on pretrial, and in presenting its case, offering testimony of an oral agreement, a deposit receipt, and escrow instructions. At the conclusion of its evidence, defendants moved for a nonsuit, the first opportunity defendants with propriety could raise the bar of the statute of frauds (*Carrier & Braddock* v. *Straus & Co.,* 213 Cal. 508 [2 P.2d 811]) ; and thereafter, when the trial judge reserved his ruling on the motion and they offered their defense, defendants properly moved to strike all testimony with reference to any oral agreement relative to the subject property between Garson and Brown, as contrary to the statute of frauds (*Hanley* v. *Murphy,* 70 Cal.App. 157 [232 P. 767]). When it first became apparent that plaintiff was relying solely upon the oral agreement, defendants then immediately and properly pursued the issue of the statute of frauds raised by the general denial in their answer, by objecting in the only manner at that time available to them—motion for nonsuit and then, motion to strike, both of which were duly considered by the trial court. These circumstances do not admit a waiver of the right to now rely upon the defense.

We are somewhat perplexed by appellant's argument on the merits, but deem the same to convey primary reliance by it

on the alleged oral agreement, which, if misplaced because of lack of proof, then on the provision for payment of commission in the escrow instructions, which it contends constituted either a sufficient memorandum to satisfy the requirement of the statute of frauds, or a contract enforceable for its benefit. It more specifically argues that it is entitled to a $7,500 commission inasmuch as it procured a buyer ready, willing and able, and defendants acted in bad faith in procuring the cancellation of the escrow; and further, that it was the third party beneficiary of an agreement for payment of commission contained in the escrow instructions signed by the purchaser and defendants.

Although recovery on the alleged oral agreement standing alone is barred by the statute of frauds, appellant nevertheless continues to predicate its position on the same oral agreement of employment supported by a written memorandum (escrow instructions) providing for a $7,500 commission, to take it out of the statute. Appellant's claim lacks merit mainly because it did not prove the oral agreement alleged in its complaint. In addition, plaintiff is entitled to no commission under the escrow instructions because the sale to Stahl was never completed.

Plaintiff alleged an oral contract of "January 26 [*sic*], 1957," whereby defendants "employed plaintiff as a licensed real estate broker to negotiate for the sale of, and to procure a purchaser who was then and there ready, willing and able to purchase" and "agreed to pay to plaintiff a real estate broker's commission in an amount equal to 5% of the sales price of said real property, or all sums in excess of $285,000, whichever sum was less"; and in support thereof a written memorandum—a provision in the escrow instructions that "(S)ellers assume liability for payment of a broker's commission to the Ira Garson Realty Co. in the sum of $7,500."

Garson's own testimony proves beyond doubt that plaintiff rejected Brown's declaration he would take $285,000 net to him as a "net listing" his organization "never takes" as against its policy; and the evidence shows without contradiction that after plaintiff refused to deal with the property on a net basis, Brown then, at the instance and request of Garson, finally declared that if the latter gets him $300,000 for it he would pay a 5 per cent commission thereon. The record completely denies the existence of a net listing agreement or one to pay "all sums in excess of $285,000"; nor has any oral agreement of January 29, 1957, to pay 5 per cent of the sales

price been established in the evidence—it shows, at most, an oral authorization of Brown on that date to permit a sale of the property for $300,000 for which he would pay 5 per cent commission.

Neither does the evidence sustain an oral contract of employment on January 29, 1957, wherein plaintiff was employed to procure a purchaser or to negotiate for the sale of defendants' property as alleged in the complaint. All the record shows in this regard is that Garson, a stranger to Brown, but knowing his property was on the market and other brokers were working on it, approached him by telephoning him at his home on January 29, 1957, and asking him for authorization to sell the property if he could. He at no time obtained an exclusive listing from Brown; actually all he did was to solicit from him the opportunity to sell the property. When Brown suggested a net price to him, which he rejected, Garson continued to pursue the subject by saying: ''(P)lease give me a price on which you can pay me a commission of 5%.'' It is clear that Brown neither approached Garson nor solicited his services, nor employed him to sell his property; but at most merely indicated a willingness to sell it for $300,000 and pay a 5 per cent broker's commission out of the proceeds. We fail to find the oral contract of employment alleged in the complaint.

Nor does the evidence sustain the provision in the escrow instructions as an effective written memorandum of the oral agreement of January 29, 1957, as alleged in the complaint. The instructions dated April 24, 1957, mentioned a $7,500 commission. This is not 5 per cent of the sales price. Further, on January 29, 1957, an agreement neither for a net listing nor for 5 per cent of the sales price existed; and in any event the sum of $7,500 was not mentioned. On the contrary, the proof shows that Brown was willing to accept $300,000 for the property and pay 5 per cent thereon, or $15,000.

In the absence of a written agreement for employment and payment of commission, or listing, or a three party agreement by way of deposit receipt between buyer, seller and broker, even if plaintiff relies on an oral agreement and a written memorandum thereof in the form of a provision in the escrow instructions, assuming the same to have been proved, recovery still fails for it has not proved that the sale between the buyer it procured and the seller was completed. Under the circumstances of the case at bar, it is not sufficient to show that it found a buyer ready, willing and able, and is

entitled to a commission without regard to the consummation of the sale.

The sale to Stahl was never completed, the escrow was never closed; and plaintiff did not show any agreement with defendants to pay the $7,500 regardless of whether a sale was effected, in fact, any such arrangement or suggestion of the same was emphatically denied by Brown. Garson testified that the time of payment was to be subsequent to June 30th, the close of plaintiff's fiscal year; but Brown, whose testimony the trial court obviously accepted, testified that he told Garson when he accepted the reduced $292,500 price and rejected his demand for a 5 per cent commission that he would allow him $7,500 on that price, but that payment would be after the escrow closed; and said "I told him that as soon as the escrow will be completed, he (Garson) will get $7,500 out of escrow." He was definite in his testimony that he never told Garson anything different, never promised him any money regardless of whether the escrow was completed, and that Garson never asked for any commission regardless of whether the escrow was closed.

█  That it is necessary for recovery of a commission under the circumstances of the instant case for the sale to be consummated is supported by the rule set forth in *Lawrence Block Co.* v. *Palsion,* 123 Cal.App.2d 300, at pages 306-307 [266 P.2d 856] : "Where the only agreement to pay a broker a commission is contained in the contract between his principal and the customer, the broker's right to compensation is dependent upon performance of that contract. If the customer refused to perform, or if the contract is cancelled or rescinded, the broker cannot recover. In such cases the broker, not having the protection of the ordinary broker's contract for compensation for service to be performed, must stand or fall on the contract entered into; and if he has seen fit to allow payment of his compensation to be dependent upon the performance of a contract made between parties other than himself, he cannot complain if, through the nonperformance of that contract, his own contingent rights be lost (cited cases)." In that case the broker had no written listing but relied on the agreement signed by the buyer and seller (defendants) reciting "for services heretofore rendered, we also agree to pay Lawrence Block Co., Inc. (5%) five per cent of the above sales price" (p. 304). The parties never went into escrow and the plaintiff broker sued for the 5 per cent commission, claiming he had earned it when he procured a buyer ready, willing

and able to buy and obtained the agreement between buyer and seller. Although it is obvious from a reading of the opinion that plaintiff, prior to the execution of the agreement must have had an oral agreement for a 5 per cent commission although perhaps unenforceable, the only written agreement was that between buyer and seller.　■■■　From a reading of *Irwin* v. *Klimper*, 56 Cal.App. 434 [205 P. 714]; *Jennings* v. *Jordan*, 31 Cal.App. 335 [160 P. 576]; *Brion* v. *Cahill*, 34 Cal.App. 258 [165 P. 704]; *Devereux* v. *Sirkus*, 105 Cal.App. 2d 340 [233 P.2d 644]; *K. Lundeen Corp.* v. *Barlow*, 120 Cal.App. 391 [7 P.2d 1102]; *Houghton* v. *Kuehnrich*, 46 Cal. App. 469 [189 P. 457]; and *Dowds* v. *Armstrong*, 17 Cal.App. 2d 485 [62 P.2d 411, 63 P.2d 1114], it is apparent that our courts have taken the position that if a broker fails to protect himself with a written employment contract of his own for the payment of a commission, and relies on an oral promise and an agreement between third parties to which he is not a party, he must stand or fall on that agreement and if the sale is not consummated the commission does not become due. He cannot complain if through the nonperformance of the agreement his own contingent rights be lost. (*Lawrence Block Co.* v. *Palston, supra,* 306-307; *Mitchell* v. *Johnston,* 140 Cal. App.2d Supp. 982 [298 P.2d 170]; *Sanstrum* v. *Gonser,* 140 Cal.App.2d 732 [295 P.2d 532].) This appears to be the equitable solution where the broker initially failed to protect himself with a contract of his own and the seller received no benefit from the broker's services, which for the greater part were voluntarily rendered (*Jennings* v. *Jordan,* 31 Cal. App. 335 [160 P. 576]). "Unless and until the exchange was consummated, the parties would receive no benefit from Eppinger's efforts, and, as we have seen, there is no obligation existing to pay Eppinger anything except that arising from the written agreement under consideration. The provision relating to such payment is not separable from the remainder of the contract . . ." Holding that when the contract was rescinded the provision for payment of the compensation also fell, the court said: "(I)f the broker should suffer any hardship from such construction, it is one inherent in the form of the contract entered into, and which was the only means he chose for his protection." (P. 338.)

The cases relied upon by appellant, including *Cole* v. *Low,* 81 Cal.App. 633 [254 P. 676], are not here in point, for "(T)he rule laid down in those cases is based entirely on the principle that the broker, having performed *what he was em-*

*ployed* to do, is entitled .to be paid without regard of the ultimate fate of the contract between his principal and the purchaser produced by him. Those cases have no application for a situation where the claim of the broker is based on a provision of a contract of sale between his principal and the person produced by him to which he himself is not a party. In such a case, his rights are those only conveyed by such contract. (*Brion* v. *Cahill,* 34 Cal.App. 258, 260-261 [165 P. 704].)'' (Emphasis added.) (*Lawrence Block Co.* v. *Palston, supra,* p. 306.)

Relative to the language employed in the escrow instructions—''(S)ellers assume liability for payment of a broker's commission to the Ira Garson Realty Co. in the sum of $7,500''—appellant contends that it constituted a direct promise to pay regardless of whether the sale was consummated. The record does not support any finding of a promise to compensate for valuable services already rendered; and in any event, any construction of the provision as an absolute promise to pay is disputed not only by the rule laid down in the Lawrence Block case, *supra,* but by the evidence. The trial court herein properly construed the same to be a promise to pay a commission if the sale was effected and as an assumption of such liability as might arise in the event of consummation. Such conclusion appears to be well justified by Brown's testimony that when he agreed to accept Stahl's offer of $292,500, instead of the $300,000 he sought, he told plaintiff that the $7,500 commission he was willing to allow it would be paid ''as soon as the escrow will be completed,'' and that it would be paid ''out of escrow.'' It is obvious that appellant was to be paid out of the proceeds of the sale; thus, if no sale came into existence, there was no fund out of which the commission could be paid. The record before us supports at most a contingent promise to pay, the failure of which contingency lost to plaintiff the right to compensation.

Appellant's contention that its failure, as a licensed real estate broker, to disclose to its principal (defendants) the fact that it had agreed with Stahl (from whom Garson had previously received a commission on another transaction) to accept a reduction of its commission from defendants in exchange for an exclusive listing from Stahl to lease the property for him, a continuance of ''a very favorable relationship'' with him, and ''potentially a remunerative situation,'' did not constitute bad faith, is based upon the erroneous assumption that a ''net listing situation'' existed between plaintiff and

defendants, citing *Hiss* v. *Mulholland*, 96 Cal.App. 121 [273 P. 859], and *Allen* v. *Dailey*, 92 Cal.App. 308 [268 P. 404]. The evidence affirmatively shows that plaintiff definitely refused to deal with defendants' property on a net basis, and that a net listing was at no time involved; it also points up instances of plaintiff's lack of good faith and its failure to disclose to its principal various material facts, for instance—when plaintiff submitted the $292,500 offer to Brown, Garson nevertheless demanded of him a 5 per cent commission thereon, or $14,625, despite his agreement with Stahl that he would accept $7,500 in order to facilitate the sale to him at $292,500, and despite Brown's declared willingness to pay 5 per cent on only a $300,000 price, and in addition Garson did not disclose the Stahl-Garson agreement made to defendants; both during escrow and after May 13 plaintiff told Stahl it was always willing to release him from the escrow in order to secure consent of defendants to the return of his deposit, but that defendants were unwilling to release him; and plaintiff secured the signature of defendants to its amended escrow instructions extending the time of the escrow 10 days without disclosing that Stahl had refused to sign the same.

Appellant claims, without support of authority, that the rule relative to the failure of disclosure refers only to a material fact which results either in an actual gain to the broker or a detriment to the principal; but this is not the rule. "The broker is bound to disclose to the principal any facts known to him which are material to the transaction . . . and any concealment from the principal of material facts known to the agent . . . may operate to forfeit the right of the agent to compensation for his services (citations), and it matters not that there was no fraud meditated and no injury done. The rule is not intended to be remedial of actual wrong, but preventive of the possibility of it." (*Baird* v. *Madsen*, 57 Cal.App.2d 465, 476 [134 P.2d 885].)

It is further contended that defendants did not act in good faith in procuring the cancellation of the escrow. Such a claim is not supported by the evidence. A review thereof discloses a delay in the proceedings occasioned by the plaintiff and an obvious expressed intention on the part of Stahl that time was of the essence as provided in the escrow instructions. Solicited by plaintiff to permit an extension of the escrow 10 days past May 10th, Stahl refused and definitely advised it that if the escrow was not completed by May 10th, as provided in the escrow instructions, he would in accordance

therewith, withdraw therefrom. Immediately after April 26th plaintiff was in contact with its counsel relative to the escrow and advice was available to it; further, plaintiff undertook to obtain and put into escrow the survey required in connection with the extended coverage title insurance policy and on May 2nd was authorized by defendants' counsel to have one made. Knowing that Stahl intended to withdraw from escrow if it was not in condition to close by May 10th, plaintiff nevertheless did not order the survey until May 7th, and did not deliver the same into escrow until May 10th, the actual scheduled escrow closing date. It seems clear that plaintiff's delay in this regard constituted a default for which it must assume at least part of the responsibility for the failure of the escrow to close on the day required in the escrow instructions.

As to defendants, they were willing to extend the escrow 10 days and, at the solicitation of plaintiff, actually signed the amended escrow instructions prepared by it, extending the time to May 20th. Inasmuch as the escrow was not in condition to and did not, close on Friday, May 10th; on Monday, the 13th, Stahl, in writing, demanded of the escrow holder cancellation of the escrow and the return of his $10,000 deposit, a copy of which letter was immediately forwarded by the escrow holder to defendants' attorney, who on May 14th replied in writing objecting to any cancellation. Before May 13th, and thereafter, Garson repeatedly told Stahl that plaintiff was willing to release him from the escrow but defendants would not permit him to withdraw. Apparent to them that Stahl intended to stand on his May 13th demand for cancellation, defendants, a month later, and after June 18th, negotiated to sell the property to another for which sale defendants received not a penny more. We fail to perceive any lack of good faith on the part of defendants in connection with the cancellation of the escrow.

Appellant's second cause of action seeks recovery on the theory that it is a third party beneficiary of the provision for payment of the $7,500 commission contained in the escrow instructions. The latter were signed by Stahl and defendants; plaintiff was not a party thereto. A line of authority following *Dowds* v. *Armstrong,* 17 Cal.App.2d 485 [62 P.2d 411, 63 P.2d 1114]; *K. Lundeen Corp.* v. *Barlow,* 120 Cal.App.2d 391 [7 P.2d 1102]; *Houghton* v. *Kuehnrich,* 46 Cal.App. 469 [189 P. 457], and *Lawrence Block Co.* v. *Palston,* 123 Cal.App.2d 300 [266 P.2d 856]; has established the rule applicable here, that if the broker chooses to rely for his com-

mission on an agreement between other persons, rather than enter into a contract of his own with the seller, then his right to a commission becomes a contingent one dependent on consummation of the sale. In the case at bar when the terms of the only written agreement in existence between Stahl and defendants failed, plaintiff, upon noncompletion of the sale provided therein, lost its right to any commission. Inasmuch as no *direct* right of plaintiff to any commission existed after Stahl withdrew and cancelled the escrow, we find no merit in its attempt to assert the same right under the agreement in a lesser capacity as a third party beneficiary.

Even had plaintiff a right to rely upon the agreement between Stahl and defendants, it is obvious under its terms making time of the essence and providing cancellation by any party after May 10th, if the escrow was not then in condition to close, that Stahl's letter of Monday, May 13th, cancelled and rescinded the escrow instructions and any agreement or prospective sale between him and defendants (*Leland* v. *Craddock*, 83 Cal.App.2d 84 [187 P.2d 803]). His action after the close of business on Friday, May 10th, was, under the circumstances, prompt. Under the terms of the escrow providing that ''any party who then shall have fully complied with his instructions may demand the return of his money or property,'' Stahl, against whom there is no evidence of noncompliance with any of the instructions, properly and timely exercised his right to cancel. The fact that defendants did not want a cancellation of the escrow and made objection thereto, could not and did not affect the validity, force or effectiveness of his rescission; and thereafter without Stahl's consent neither defendants nor the escrow holder could reinstate the agreement with him. Nor does the evidence support any contention that subsequent to May 13th, both parties were proceeding toward a consummation of the escrow. There is no record of any conduct on the part of Stahl personally between May 13 and July 1, 1957, and indeed there exists in the evidence no consent on his part to continue under the escrow agreement after his letter of rescission was sent to the escrow holder. The only act that could be attributed to Stahl during this period was that of his counsel sending a letter on June 7, 1957, acknowledging receipt of the preliminary title report. Rescission became effective in May when Stahl, under the agreement, exercised his right to cancel the escrow; not when the parties finally executed instructions to the escrow holder determining the amount to be returned to Stahl and

authorizing the money to be paid to him. Plaintiff filed its complaint after the date of the rescission, June 18, 1957.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.