*598
 
 SHOEMAKER, J.
 

 Plaintiffs appeal from a judgment for defendants in an action to recover secret profits allegedly realized by defendants in two real estate transactions.
 

 The facts are as follows: In 1954, the plaintiffs, Walter Pascal and his wife Gladys, were the owners of two pieces of real estate in San Francisco, one located on Chestnut Street, which stood in both names, the other located on Dolores Street, which stood in the wife’s name alone. Prior to April 1954, plaintiffs employed the defendant Frank Cotton, a licensed real estate broker, to sell these properties. Plaintiffs told Cotton that they wanted $37,500 for the Chestnut Street property net to them. On April 6, 1954, Cotton, and his associate Jackson and his wife, bought the Chestnut Street property, which purchase was not disclosed to the Pascals. Later, in December of 1954, Cotton arranged a sale of the Dolores Street property to a Verna M. Palmer, also known as Cora Jotz, which property, on January 3, 1955, she deeded to defendants in exchange for certain other property owned by them, a fact also not disclosed to the plaintiffs.
 

 In May of 1958, plaintiffs were contacted by their present attorney, who told them that Cotton had actually purchased their properties on his own behalf, and had subsequently sold them at a profit. Plaintiffs then employed him to represent them in this action to recover the secret profits allegedly realized by defendants Cotton and Jackson.
 

 After a trial without jury, the court found that plaintiffs had not been influenced by defendant Cotton in determining the selling prices of the real properties owned by them, but had arrived at their own independent judgment on this matter ; that defendants Cotton and Jackson had at no time made any false, willful, or fraudulent representations to the plaintiffs; and that there had been no breach of any fiduciary duty on the part of said defendants. Judgment was for defendants.
 

 Appellants’ arguments for reversal are directed solely to the sufficiency of the evidence to sustain the judgment in favor of respondents. They assert that the relationship of a broker to his principal is a fiduciary one which imposes upon the broker the duty to act with the highest good faith toward his principal, and that as such he may not deal in his own behalf unless he makes a full and complete disclosure of his adverse interest. They strongly urge that the evidence in this case indicates that no disclosure was made,- hence the law requires that Cotton and the Jacksons, who acted in concert with him,
 
 *599
 
 disgorge all secret profits which were acquired by virtue of Cotton’s agency.
 

 In regard to the Dolores Street transaction, appellants contend that there was never a bona fide sale of the property to Verna Palmer. They assert that respondent Cotton actually bought the property on his own behalf and that he used Mrs. Palmer as a mere front for the purchase. Appellants stress the fact that a letter of instructions purportedly sent to the title company by Mrs. Palmer was in fact written by respondent Cotton. They also contend that Cotton’s agreement to obtain the Dolores Street property from Mrs. Palmer had already been made prior to Mrs. Palmer’s contract to buy the property from them. Under such circumstances, appellants contend that Mrs. Palmer served only as an agent for respondent Cotton and cannot be viewed as a bona fide purchaser in her own right.
 

 The testimony on this issue was conflicting. Respondent Cotton consistently stated that his “trade” agreement with Mrs. Palmer was never made until after she had entered into a binding contract with appellant on December 13, 1954. Although Mr. Cotton evinced some uncertainty as to the exact date when he had arrived at his agreement with Mrs. Palmer, he was sure that it was at a time when her deal with appellant had already been “consummated” and “finished.” As for the letter containing Mrs. Palmer’s instructions to the title company, Mr. Cotton testified that the body of the letter had been written in his handwriting, but that the signature had been written by Verna Palmer. Under such circumstances, a factual question was presented. Appellants have failed to show that the evidence was not sufficient to support the trial court’s finding that Verna Palmer bought the Dolores Street property on her own behalf and did not convey her interests to Cotton and the Jacksons until after she had received title from appellants.
 
 [1]
 

 Admittedly, the Chestnut Street property was purchased by Cotton and the Jacksons without disclosure thereof to the Pascals. Appellants contend that this admission constitutes
 
 *600
 
 a prima facie showing of fraud under the well-established rule that a broker may not purchase property on his own behalf in the absence of a full disclosure to his principal.
 
 (Curry
 
 v.
 
 King
 
 (1907) 6 Cal.App. 568, 575 [92 P. 662];
 
 Bate
 
 v.
 
 Marsteller
 
 (1959) 175 Cal.App.2d 573, 580-581 [346 P.2d 903].) Respondents, on the other hand, assert that the general rule requiring such disclosure is inapplicable where, as in the instant ease, the principal has set a
 
 net
 
 price for his property and has indicated that the broker shall be entitled to any excess thereover as a commission. Respondents rely upon
 
 Allen
 
 v.
 
 Dailey
 
 (1928) 92 Cal.App. 308 [268 P. 404], as authority for their position. In the
 
 Allen
 
 ease, the court held that where a seller had offered his property for sale at a stated net price, the broker could accept the offer on his own behalf, without prior disclosure, and could then obtain specific performance against the seller. The court stated, at pages 313-314: “It is doubtless true that if the agency be the ordinary one wherein the agent is employed to obtain for his principal the highest possible price for the property beyond a fixed minimum, for which service the agent is to be paid a commission on a percentage basis, fiduciary relations arise out of such employment which preclude the agent from becoming the purchaser of the property or acting for others and thus unduly profiting to the injury of his employer. But it appears to be well settled also that where, as here, an owner authorizes the sale of his property by an agent for a fixed price net to him with the understanding that the agent selling the same shall be entitled to any excess thereover as a commission or shall look to the purchaser for the payment of the same, the agent may without violating any trust relationship purchase the property on his own account or act as the agent of others in acquiring the same. [Citations.] The two agencies mentioned differ widely from each other because in the former the contract fixes the minimum price and a percentage basis of compensation for the agent, as a result of which the principal profits by any price received for the property in excess of the minimum; whereas under the latter agency the principal profits nothing beyond the net price fixed, and consequently it becomes immaterial so far as the principal is concerned to whom the property is sold or for what price it is sold above the minimum.” (See also
 
 Hiss
 
 v.
 
 Mulholland
 
 (1929) 96 Cal.App. 121, 126 [273 P. 859].)
 

 Respondents ’ position is well taken. Appellant Walter Pascal himself testified that he and his wife had decided to
 
 *601
 
 sell the property for a net price to them of $37,500, and that they had accordingly told Mr. Cotton to take any excess above that amount as a commission. Respondents also introduced into evidence the deposition of Mr. Pascal. He there stated that he had no idea what sort of a commission Mr. Cotton would receive, but that as long as he and his wife got their $37,500, he did not care if Mr. Cotton sold the property for $40,000 or obtained a commission of $2,000. He further stated that he had advised Mr. Cotton not to ask much above $37,500 for the property because he and his wife thought that a higher price might kill the sale for them.
 

 In view of this evidence, it cannot be doubted that appellants entered into the precise type of net listing contract described in the
 
 Allen
 
 ease.
 

 Appellants do not now contend that the
 
 Allen
 
 ease no longer represents the law of this state. To the contrary, appellants themselves rely on the recent case of
 
 Ira Garson Realty Co.
 
 v.
 
 Brown
 
 (1960) 180 Cal.App.2d 615, 626-627 [4 Cal.Rptr. 734], where the court expressly distinguished the
 
 Allen
 
 case on the ground that its reasoning was not applicable in the absence of a “net listing situation.” With one exception, all of the other authorities cited by appellants involve the ordinary agency whereby the broker undertakes to obtain the highest possible price for his client. In
 
 Adams
 
 v.
 
 Herman
 
 (1951) 106 Cal.App.2d 92 [234 P.2d 695], however, the plaintiffs did offer their property for sale at a net price, and defendant broker, without plaintiffs’ knowledge, sold the property to his wife. On appeal from a judgment of nonsuit, the court held that the plaintiffs had established a prima facie case against both the broker and his wife for the profits subsequently obtained through a resale of the property. The court made no reference to the
 
 Allen
 
 decision, however, and the case would appear distinguishable for the reason that respondents conceded their liability for any profits obtained through a sale directly to the broker and based their defense solely on the theory that a sale to the wife was the same as a sale to a stranger (p. 99).
 

 The Chestnut Street sale falls directly within the purview of the
 
 Allen
 
 rule, and we must agree that no fiduciary obligation to appellants was breached.
 

 In regard to the Dolores Street transaction, the evidence reveals that respondent Cotton found a buyer on the open market who was willing to purchase the property at the price specified by appellants, and fully supports the court’s
 
 *602
 
 finding with respect thereto. The mere fact that the buyer thereafter sold the property to respondent Cotton does not establish fraud on his part.
 

 Judgment affirmed.
 

 Kaufman, P. J., and Agee, J., concurred.
 

 Appellants’ petition for a hearing by the Supreme Court was denied September 5, 1962. Traynor, J., and Peters, J., were of the opinion that the petition should be granted.
 

 [1]
 

 Appellants do not contend that there was any evidence that respondent Cotton persuaded Mrs. Pascal to sell the property for less than its true value. Indeed, Mrs. Pascal stated that she and her husband had agreed between themselves to sell the property for $31,000. She stated, more specifically, that respondent Cotton did not induce her to sell for that price; that she and her husband had come to that conclusion themselves; that she had relied upon her own judgment; and that Mr. Cotton did not put any pressure on her in that respect.