[Civ. No. 26132. Second Dist., Div. Two. Jan. 21, 1963.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Plaintiff and Appellant, v. C. W. HUTCHINSON et al., Defendants, Cross-Complainants and Respondents; CHARLES COATES, Cross-Defendant and Appellant.

Hugo A. Steinmeyer, Robert H. Fabian and Samuel B. Stewart for Appellants.

Hanna & Morton, Max K. Jamison and Edward S. Renwick for Defendants, Cross-Complainants and Respondents.

HERNDON, J.—Appellant Bank of America filed this action against respondents Hutchinson to recover $20,000, the amount of a promissory note of which said respondents were the makers and said bank the payee. Respondents filed a cross-complaint against the bank, joining as additional cross-defendants the appellant Coates, one of the bank's branch managers, and one Alexander T. Chohon. By their cross-complaint, respondents sought cancellation of said note and an award of money damages upon allegations of fraud and deceit.

After a nonjury trial, the court below made its findings in favor of respondents and awarded them judgment accordingly. Appellants now contend: (1) that the evidence is insufficient to support the trial court's findings; and (2) that the trial court erred in denying their motion to strike all evidence of oral representations with respect to the credit of said cross-defendant Chohon. We find no merit in either of these contentions.

█ Viewing the evidence in the light most favorable to the respondents, as we are required to do, the facts appear as hereinafter recited. █ Respondents, Mr. and Mrs. Hutchinson, were depositors and customers of the Beverly-Vermont branch of appellant Bank of America from October 1958 through December 1958. At the time they opened their account, appellant Coates, the branch manager, wrote them a letter thanking them for their deposit and offering the services of "our various departments". Appellant Coates had known Chohon since 1954 when Coates was first assigned to this branch of the bank. Chohon had a personal account at this branch and also the authority to draw checks upon the accounts of the Continental Escrow Company and ATC Corporation located there.

Prior to the time of the transaction here involved, respondents had certain business dealings with said Chohon. On December 15, 1958, they received a call from him in which he solicited their help in connection with an overdraft in the sum of approximately $43,000 on his account with the Farmers and Merchants Bank in Long Beach. Respondents advised him that they could not help him, but, at his insistence, they agreed to meet with him the following day.

Prior to meeting with him, however, respondents decided to seek the advice of appellant Coates, the mutual banker of the parties, regarding Chohon's financial condition. An appointment was made, and when respondents arrived at the bank they found to their surprise that Chohon was there with appellant Coates.

A discussion followed wherein Chohon explained that his overdraft at the Farmers and Merchants Bank had resulted from his depositing two checks which he believed to be good but which subsequently were dishonored. He explained that this could easily happen in the escrow business and that if he did not cover this overdraft, he stood to lose the Continental Escrow Company. When appellant Coates was asked by respondents whether the bank could lend Chohon any money, Coates stated that it could not, because "he had loaned Mr. Chohon the maximum amount that he was able to go"; that he could go to $20,000, but that to go any higher would require the approval of the "board down in town" and that this could not be done because the Farmers and Merchants Bank had set a deadline of 3 o'clock that afternoon.

In regard to Chohon's financial condition, Coates stated that if he "took care of this $43,000 overdraft that he would be in fine shape." Coates said that he could lend respondents $20,-000 unsecured which they, in turn, could lend to Chohon together with other monies which they had on deposit in their account at that time. Relying upon Coates' assurance, respondents agreed to these arrangements.

Respondents had not brought their pass book or personalized checks with them, but Coates handled or directed the procedures which followed. First, respondents signed a note in favor of the bank in the amount of $20,000. This amount was immediately deposited in their account. They then drew a counter check on this account payable to Chohon in the amount of $38,300, which he endorsed and handed to Coates. Chohon signed and delivered to respondents his note drawn in their favor in this amount. Coates then accepted from Chohon a $4,000 check drawn upon the ATC Corporation account and issued a cashier's check payable to Chohon in the amount of $42,300.

It was expressly stated that this cashier's check was to be used to cover the overdraft at the Farmers and Merchants Bank. "Mr. Chohon said he would have to leave to make it to the bank by 3:00 o'clock." As he left, Coates said to him, "Alex, be sure to pick up all the papers on this."

We shall now recite certain facts which were known to Coates at the time of the above described meeting but which, according to respondents' testimony were not disclosed to them. On November 6, 1958, Coates and an assistant cashier of the Bank of America had a telephone conversation in the course of which they agreed that a review of Chohon's financial statements indicated his lack of resources sufficient to justify a loan.

During the period between November 14 and December 12, 1958, Chohon had overdrawn his account at the Bank of America to the extent of $55,151.75. Coates knew of these overdrafts and knew that they had resulted from the dishonoring of checks drawn upon Chohon's account at the Farmers and Merchants Bank that had been deposited in the Bank of America. In addition Coates knew (1) that the true amount of Chohon's overdraft was $98,000 rather than $43,000; (2) that *his* bank, rather than the Farmers and Merchants Bank, apparently stood to lose the additional $55,000; (3) that it was very imperative that Chohon immediately cover his overdraft at the Farmers and Merchants Bank because he had, for his own use, drawn a check in the amount of $125,000 against his Continental Escrow Company's *trust accounts,* and had given it to the Farmers and Merchants Bank; and (4) that if he failed to make good his overdraft, this trust account check would be negotiated with obviously serious consequences to Chohon and the Continental Escrow Company.

Further, on December 16, 1958, the day of the meeting above described, Coates had prepared a "branch loan credit report" in which he noted the overdraft existing at his branch resulting from the dishonor of the checks drawn on the Farmers and Merchants Bank at Long Beach and, in addition, noted that the Farmers and Merchants Bank had withdrawn a line of credit extended to Chohon. This report reads in part: "I strongly suspect that there is something very wrong, but Mr. Chohon has gone to the Bank in Dallas and we won't know how severe our position is until he returns on December 23, 1958. Upon Mr. Chohon's return to Los Angeles on December 23, 1958, we will endeavor to have a meeting in which we can either seek relief, obtain a secured position, or know the extent of our problem." Coates, although he had prepared the report that very day, did not inform respondents of the material facts therein stated.

Finally, Coates knew that the $4,000 check which he accepted from Chohon on December 16, 1958, to provide

the funds necessary to justify issuance of the cashier's check was drawn on the ATC Corporation account in which there was at that time a balance of only $304.10. He also knew this corporation was delinquent on a certain note secured by a chattel mortgage held by the bank.

Respondents testified that, if they had known all these material facts, they would not have entered into the transaction which involved their lending to Chohon the sum of $38,300, but that lacking such knowledge, they had relied upon Coates' false representation that if the $43,000 overdraft were "taken care of" Chohon would be "in fine shape."

On December 17, 1958, Chohon returned to the Beverly-Vermont branch of the Bank of America and spoke with Coates regarding negotiating the $42,300 cashier's check. Coates testified that he counselled Chohon "that having failed in his original purpose he should restore the $38,300.00 or at least consult with Mr. and Mrs. Hutchinson before making another move." However, the check was immediately negotiated by Coates. The sum of $17,300 was deposited in the ATC Corporation account upon which Coates had authorized an overdraft the preceding day. A new cashier's check in the amount of $25,000 was given to Chohon. Coates did not advise respondents of these transactions.

Thereafter, on December 24, 1958, Coates was advised by an assistant vice-president of the bank that "[n]ot withstanding our various admonitions at the time of our former difficulties with Mr. Chohon were cleaned up, it appears that his account is again out of hand. Considering our very unpleasant experience with this individual and the hazards inherent to dealing with him, you are hereby directed to: (1) collect his overdraft as soon as possible, by action against his aircraft and/or any other available holdings, if necessary, (2) allow no more credit against uncollected funds and as soon as the overdraft is collected, close all accounts, including that of Continental Escrow Company." (Emphasis added.) The airplane represented security for the delinquent note of the ATC Corporation. It was repossessed and, after the note was satisfied, a $23,336 balance was applied to Chohon's overdraft. The $17,300 received from the negotiation of the original cashier's check and deposited in the ATC account had theretofore been withdrawn and the account closed. Respondents were not advised of any of these transactions.

It is apparent from the foregoing that the trial court was amply justified in finding that the representations of appellant

Coates were made in the course and scope of his employment by appellant Bank of America and that Coates had no belief in their truth; and that such representations were made for the purpose of inducing respondents to borrow $20,000 from the bank and to advance said sum, together with $18,300 from their own account, to Chohon.

"The determination as to whether a particular statement is an expression of opinion or an affirmation of a fact is often difficult, and frequently is dependent upon the facts and circumstances existing at the time the statement is made. . . . The cases also indicate that where there is a reasonable doubt as to whether a particular statement is an expression of opinion or the affirmation of a fact, the determination rests with the trier of the facts." (*Willson* v. *Municipal Bond Co.*, 7 Cal.2d 144, 150-151 [59 P.2d 974].)

Further, even assuming that all statements made by Coates were expressions of opinion, yet ". . . there are two exceptions to the rule that expressions of opinion are not actionable . . . The first is that an expression of opinion is actionable if the party expressing it does not honestly entertain that opinion. [Citations.] . . . The second exception arises when the party making the false representation of opinion has superior knowledge or special information. [Citation.]" (*Ogier* v. *Pacific Oil & Gas Dev. Corp.*, 132 Cal. App.2d 496, 506-507 [282 P.2d 574].)

Finally, " 'Even though one is under no obligation to speak as to a matter, if he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells but also not to suppress or conceal any facts within his knowledge which will materially qualify those stated. If he speaks at all he must make a full and fair disclosure.' [Citation.] Where there is a duty to disclose, the disclosure must be full and complete, and any material concealment or misrepresentation will amount to fraud sufficient to entitle the party injured thereby to an action. [Citation.]" (*Pashley* v. *Pacific Elec. Ry. Co.*, 25 Cal.2d 226, 235 [153 P.2d 325].)

The record herein clearly demonstrates that the findings of the trial court were abundantly supported by the evidence and that the judgment, cancelling the $20,000 note and awarding respondents the unpaid balance of the sums which they had advanced to Chohon, was entirely lawful and proper.

Appellants' second assignment of error is founded upon the provisions of section 1974 of the Code of Civil Pro-

cedure which provides: "No evidence is admissible to charge a person upon a representation as to the credit of a third person, unless such representation, or some memorandum thereof, be in writing and either subscribed by or in the handwriting of the party to be charged."

Assuming for the purposes of this opinion that the last quoted section would have been applicable to the facts of the instant case, appellants are now foreclosed by the fatal fact that they tried their entire case without making any objection whatsoever to the reception of such evidence, although it was apparent throughout the trial, and prior thereto, (as witnessed by the joint pretrial statement) that respondents were relying upon said oral representations. (Cf. *San Francisco Brewing Corp.* v. *Bowman,* 52 Cal.2d 607, 618 [343 P.2d 1]; *Ira Garson Realty Co.* v. *Brown,* 180 Cal.App.2d 615, 620-621 [4 Cal.Rptr. 734].)

Furthermore, the question here presented is not whether evidence admitted contrary to the statute should be stricken upon motion timely made (*Pao Ch'en Lee* v. *Gregoriou,* 50 Cal.2d 502, 506 [326 P.2d 135]; *Carrier & Braddock* v. *S. W. Straus & Co.,* 213 Cal. 508, 513 [2 P.2d 811]), but whether the trial court in the instant case abused its discretion in denying the broad, blanket motion tardily filed by appellants on May 15, 1961, two weeks after both parties had presented their arguments and rested their respective cases.

 "Since the statute of frauds relates only to a remedy, and not to a right, a defense based on its provisions can be waived. For instance, where the defendant has permitted parol proof of the existence of a verbal contract within the scope of the statute to be admitted without objection or exception, he will, as a general rule, be deemed to have waived the defense of the statute, and a belated motion to strike such oral evidence, made at a subsequent stage of the trial, should be denied." (23 Cal.Jur.2d, Frauds, Statute of, § 153, p. 444.)

 The record before us discloses that on May 1, 1961, after both sides apparently had completed their presentation of evidence, the trial court inquired of counsel: "Both sides rest?" Receiving an affirmative answer, the trial judge indicated that he had not had sufficient time to study the points and authorities submitted and inquired whether either counsel had looked into the question whether section 1974 of the Code of Civil Procedure operated to bar the cause of action or whether it merely stated a rule governing the admissibility of evidence. Both counsel indicated they had not "looked into

the subject." The court granted counsel additional time to file points and authorities if they desired, and thereafter heard further argument.

As we have indicated, appellants two weeks thereafter moved "to strike all testimony and evidence relating to representations allegedly made by said defendants with respect to the credit or financial condition of Alexander T. Chohon. . . . Said motion is directed both to testimony of affirmative oral representations allegedly made, and to evidence of the existence of an overdraft in the account of Alexander T. Chohon at Bank of America on December 16, 1958, offered by cross-plaintiffs for the purpose of showing concealment by cross-defendants of the existence of said overdraft."

This motion provides a clear demonstration of the inappropriateness of such untimely and indefinite motions to strike. The trial judge was asked to review mentally three days of testimony and to strike all unspecified but offensive portions. Inasmuch as there were a number of concealments more dramatic than the overdraft existing at the bank on the date stated in the motion, a fact which had been agreed upon in the joint pretrial statement, and since much of the evidence relating to the representations was presented by appellants themselves in the direct examination of their own witnesses, the task sought to be imposed upon the trial court was patently unreasonable and the denial thereof certainly was not an abuse of discretion.

Lastly, and without any citation of authority, appellants assert that the trial court prejudged the case in favor of respondents and denied appellants a fair trial. As the only basis for this assertion, appellants refer to several rulings made during the trial regarding the relevancy or materiality of certain proffered evidence. No useful purpose would be served by analyzing these rulings in detail; by no stretch of the imagination could it reasonably be said that said rulings indicated any prejudgment of the case by the trial court. And, finally, it is apparent from an examination of the entire record that the errors here asserted could not have produced any miscarriage of justice in this case. (Cal. Const., art. VI, § 4½.)

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.