[Civ. No. 45289. Second Dist., Div. Three. Mar. 31, 1976.]

DALE COOPER et al., Plaintiffs and Appellants, v.
JACK JEVNE et al., Defendants and Respondents.

**COUNSEL**

Blumberg & Zommick, Gale Posner and Myron Blumberg for Plaintiffs and Appellants.

Gelfand, Malamed, Susman & Benjamin, Harold H. Benjamin, Cox, Castle, Nicholson & Weekes, Lawrence Teplin, Shield & Smith and Anthony B. Drewry for Defendants and Respondents.

**OPINION**

**COBEY, Acting P. J.**—Plaintiffs, Dale Cooper, et al. (hereafter generally purchasers), appeal from judgments of dismissal (Code Civ. Proc., § 581d) of their action against Jack Jevne, Glenn S. Evans, and Mammoth Properties (hereafter generally sales agents); William Clark and Robert Hedrick, dba Clark-Hedrick Architects (hereafter generally architects); and Robert W. Sandy, Robert Thomas, Walter Brown and Ed Wells (hereafter generally county building inspectors).

These dismissals were made pursuant to Code of Civil Procedure section 581, subdivision 3, following the sustaining, without leave to amend, of the general demurrers of these defendants to relevant portions of purchasers' second amended complaint. Briefly, in this pleading purchasers seek to rescind or affirm with damages their contracts of purchase of certain condominiums in Chamonix, a 100-unit residential project at Mammoth Lakes, Mono County, California, on the ground of a fraudulent conspiracy among the builder-seller of Chamonix, East Sierra Development Corporation (hereafter generally East Sierra), and these demurring defendants, among others, to conceal from the purchasers of condominiums within the project the fact that the project was defectively, illegally and dangerously constructed. Although initiated as a class action, the class aspects of the actions are not involved in this appeal.

Since we are here passing upon the sufficiency of a pleading to state a cause of action, or to be amended to so state, we must deem for these purposes that all of its material allegations are true. (See *Alcorn* v. *Anbro Engineering, Inc.,* 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216]; *Maxon* v. *Security Ins. Co.,* 214 Cal.App.2d 603, 610 [29 Cal.Rptr. 586].)

*Dismissal of Sales Agents*

 Essentially purchasers' action against the sales agents rests solely upon the allegations contained in the second cause of action of the second amended complaint.[1] Therein purchasers allege that at and before the purchase of their condominiums within the Chamonix project, the sales agents, orally and by means of advertising brochures, made certain specified affirmative factual misrepresentations to them, for the purpose of inducing their purchases, generally regarding the luxurious nature of the condominiums and their outstanding investment potential.

Purchasers allege in some detail that the sales agents knew (but purchasers did not know) that Chamonix was constructed in a substandard manner with poor workmanship in violation of various minimum requirements of the Uniform Building Code and in significant deviation from the county-approved plans and specifications with the result that the project, as built, was hazardous to personal safety due to the possibility of structural failure of portions of the building and because of inadequate safeguards from fire. Purchasers allege further that they were ill equipped in both experience and means to discover these very serious building deficiencies.

These alleged statements of the sales agents are clearly statements of opinion. As such, they ordinarily cannot constitute actionable fraud or deceit. (See *Rendell* v. *Scott,* 70 Cal. 514 [11 P. 779], and *Schonfeld* v. *City of Vallejo,* 50 Cal.App.3d 401, 412 [123 Cal.Rptr. 669].)

---

[1]The first cause of action is for rescission of contracts of purchase of condominiums and for restitution of the consideration furnished for such purchases by purchasers. (See Civ. Code, §§ 1689, subd. (b), 1691, subd. (b).) This cause of action obviously lies only against East Sierra, the other party to these contracts and the one who presumably received purchasers' consideration thereunder.

The conspiracy to defraud allegations, to which we have just alluded, add nothing of substance to the pleading. (See *Zumbrun* v. *University of Southern California,* 25 Cal.App.3d 1, 12 [101 Cal.Rptr. 499, 51 A.L.R.3d 991].) They are conclusionary in nature and are legally insufficient unless a duty to disclose is established with respect to at least one of the charged defendants. (See 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 773, p. 2389, and 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 462, p. 2726.)

But if a person advances an opinion in which he does not honestly or cannot reasonably believe, then an action for affirmative fraud will lie if the remaining elements of the tort are present. (See *Pacesetter Homes, Inc.* v. *Brodkin,* 5 Cal.App.3d 206, 211 [85 Cal.Rptr. 39]; *Bank of America* v. *Hutchinson,* 212 Cal.App.2d 142, 148 [27 Cal.Rptr. 787]; *Ogier* v. *Pacific Oil & Gas etc. Corp.,* 132 Cal.App.2d 496, 506 [282 P.2d 574].)

■ If the sales agents knew of the alleged substantial structural defects in the condominiums, they could not honestly have held the opinion that these homes were luxurious or outstanding investments. Even if the sales agents stated their opinions sincerely, it was reckless and unreasonable to do so in light of their alleged knowledge. (See *Stowe* v. *Fritzie Hotels, Inc.,* 44 Cal.2d 416, 422 [282 P.2d 890].) Thus the complaint now before us is sufficient to state a cause of action for misrepresentation by false opinion.

We think purchasers have also stated a cause of action against the sales agents for *negative* fraud or deceit. Civil Code section 1710, subdivision 3, defines deceit as including "[t]he suppression of a fact, by one who is bound to disclose it . . . ." ■ It is the law of this state that where a real estate broker or agent, representing the seller, knows facts materially affecting the value or the desirability of property offered for sale and these facts are known or accessible only to him and his principal, and the broker or agent also knows that these facts are not known to or within the reach of the diligent attention and observation of the buyer, the broker or agent is under a duty to disclose these facts to the buyer. (*Lingsch* v. *Savage,* 213 Cal.App.2d 729, 735-736 [29 Cal.Rptr. 201, 8 A.L.R.3d 537].) Stated more succinctly, a real estate broker or agent in the sale of real estate is liable for damages caused by nondisclosure to the buyer of defects known to him and unknown to and unobservable by the buyer. (*Saporta* v. *Barbagelata,* 220 Cal.App.2d 463, 474 [33 Cal.Rptr. 661]; see also *Warner Constr. Corp.* v. *City of Los Angeles,* 2 Cal.3d 285, 294 [85 Cal.Rptr. 444, 466 P.2d 996].)

■ Since purchasers have alleged that the sales agents knew of purchasers' ignorance of the structural deficiencies, their complaint is sufficient to state a cause of action on this alternative theory of negative fraud.

Therefore, the order sustaining the sales agents' general demurrer to this cause of action should be vacated and an order entered overruling their demurrer.

## *Dismissal of Architects*

Though the second cause of action is directed against the architects, among other defendants, they are not alleged to have made any of the misrepresentations claimed and the duty to disclose, that we have just enunciated in connection with the sales agents, obviously has no application to the architects.

■ We turn therefore to the third cause of action—negligence—which runs against both the structural engineer (who is not a party to this appeal) and the architects. According to this cause of action, the architects were licensed partners in the architectural firm bearing their names. This firm prepared and furnished to the builder-seller, East Sierra, architectural drawings and plans and specifications for the construction and other improvements within the Chamonix project and acted as supervising architects in the construction of the buildings within the project. They did this professional work for a fee under written contracts, presumably with East Sierra.

Purchasers further allege in this cause of action that the architects were under a duty to exercise ordinary care as architects to avoid reasonably foreseeable injury to purchasers and that the architects knew or should have foreseen with reasonable certainty that purchasers would suffer the specific monetary damages alleged if they failed to perform this professional duty.[2] Purchasers then allege that the architects failed to perform this duty in doing the aforementioned professional work under their written contracts, presumably with East Sierra, to the already specified damage to purchasers.

The architects contend that a cause of action in negligence cannot be stated against them by purchasers for economic loss alone. They concede that an architect may be held liable for bodily injury to a third person not in privity of contract with him even though that injury occurs after the architect's work has been accepted by the one who has employed

---

[2]According to the second amended complaint, purchasers, by reason of the negligent conduct of the architects, sustained the following compensatory damages:

(1) More than $750,000 in the cost of repairs, etc. of the Chamonix project;

(2) Past and future damage to personal property;

(3) Past and future loss of use and income of their respective condominiums;

(4) The cost of past and future services and incidental expenses relating to the discovery of the alleged structural deficiencies, etc.;

(5) All sums expended and obligations incurred for additional past and future operation and maintenance of the project caused by the deficiencies in its construction.

him. (*Montijo* v. *Swift*, 219 Cal.App.2d 351, 353 [33 Cal.Rptr. 133].) But they point to a statement in *Seely* v. *White Motor Co.*, 63 Cal.2d 9, 18 [45 Cal.Rptr. 17, 403 P.2d 145], a strict liability case, reading as follows: "Even in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone."[3]

Unfortunately for the architects, the liability at issue in this case is the malpractice liability of a professional for negligence in the rendition of his services and not that of a manufacturer for defects in his product. In *Heyer* v. *Flaig*, 70 Cal.2d 223, 226 [74 Cal.Rptr. 225, 449 P.2d 161], our Supreme Court held that an attorney who negligently fails to fulfill a client's testamentary directions incurs a liability in tort for monetary loss for violating a duty of care owed directly to the intended beneficiaries. (See also *Lucas* v. *Hamm*, 56 Cal.2d 583, 588 [15 Cal.Rptr. 821, 364 P.2d 685]; *Biakanja* v. *Irving*, 49 Cal.2d 647, 648-650 [320 P.2d 16, 65 A.L.R.2d 1358]; *Barrera* v. *State Farm Mut. Automobile Ins. Co.*, 71 Cal.2d 659, 674-676 [79 Cal.Rptr. 106, 456 P.2d 674].) Under *Heyer* this right of recovery against the professional by those not in privity of contract with him extends clearly to the various items of property damage and economic loss purchasers allege that they suffered by reason of the architects' negligence. Compare *Connor* v. *Great Western Sav. & Loan Assn.*, 69 Cal.2d 850, 867 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224], where the lender, who shared the control of the development of a residential tract and cooperated with the developer therein, was held to owe a duty to the purchasers of homes within the tract "to exercise reasonable care to prevent the construction and sale of seriously defective homes . . . ." (See also *Bradler* v. *Craig*, 274 Cal.App.2d 466, 472-473 [79 Cal.Rptr. 401].)

We find nothing in the following test enunciated in *Biakanja* v. *Irving*, *supra*, 49 Cal.2d at page 650, that would lead us to refrain from imposing liability for economic loss to the purchasers upon the architects for the latter's alleged negligence in the rendition of their professional services.

---

[3]The sole California case cited in support of this statement, *Wyatt* v. *Cadillac Motor Car Division*, 145 Cal.App.2d 423, 426 [302 P.2d 665] (disapproved on other grounds in *Sabella* v. *Wisler*, 59 Cal.2d 21, 30 [27 Cal.Rptr. 689, 377 P.2d 889]), does not appear to support it completely. In *Wyatt* the manufacturer's duty was described in terms of "the exercise of reasonable care to see that the car was so manufactured and assembled as to be free from defects which might be reasonably expected to produce bodily injury *or damage to other property*." (Italics added.) At oral argument the architects conceded that their professional liability to those not in privity of contract with them would extend to property damage as well as to personal injuries.

"The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm."

In this case, the architects' duty of reasonable care in the performance of their professional services is logically owed to those who purchased the allegedly defectively designed and built condominiums within the Chamonix project. The architects must have known that the condominiums they designed and whose construction they supervised were built by East Sierra for sale to the public and that purchasers of these condominiums would be the ones who would suffer economically, if not bodily, from any negligence by the architects in the performance of their professional services.

Accordingly, the general demurrer of the architects to the third cause of action of the second amended complaint should have been overruled.[4]

### Dismissal of County Building Inspectors

The county building inspectors were not named defendants in either the complaint or the amended complaint. In the second amended complaint purchasers include them as named defendants for the first time and identify them as being, respectively, the Director of the Mono County Building and Planning Department (Sandy) and three building inspectors in the department (Thomas, Brown, and Wells). Purchasers then allege that these four defendants had the duty to inspect the Chamonix project, to disapprove construction which violated the minimum standards of the Uniform Building Code, and to post notices warning of the dangers of the deficient construction. Purchasers further allege on information and belief that the four inspectors knew that the construction of the Chamonix project was in violation of the building code and was also not in accordance with the final working drawings and specifications that their department had approved.

[4] We deem purchasers have abandoned their challenge to the propriety of the trial court's sustaining of the architects' general demurrers to the fourth and fifth causes of action since no argument is advanced in the briefs of purchasers in support of such challenge.

Purchasers thereafter allege that these four defendants conspired with other defendants to (1) permit the Chamonix project to be defectively, illegally and dangerously built, (2) cause the Chamonix project to receive a certificate of occupancy from Mono County, (3) permit it thereafter to be occupied for residential purposes, and (4) conceal all of the foregoing facts from purchasers to keep them from learning about the defective, illegal and dangerous construction of the Chamonix project.

The county building inspectors demurred generally to the second cause of action of the second amended complaint, into which the foregoing conspiracy to defraud allegations are incorporated by reference, on the grounds that purchasers had failed to allege any compliance whatsoever with the claim statutes (see Gov. Code, §§ 950.2, 945.4; *Tietz v. Los Angeles Unified Sch. Dist.*, 238 Cal.App.2d 905, 911 [48 Cal.Rptr. 245]) and that otherwise the facts alleged were insufficient to state a cause of action against them on behalf of purchasers.

The trial court sustained these demurrers on both grounds. In so doing, it expressly refused to consider unspecified material outside of the complaint as requested by purchasers. Such material apparently included an undated and unsigned copy of a claim for damages, mentioning only defendant Sandy by name, and a statement that this claim had been rejected by the Board of Supervisors of Mono County. The statement was included in a memorandum filed by purchasers in opposition to these demurrers before the hearing on them, but it was not included in the record on appeal. The copy of the claim was attached to the memorandum as an exhibit. Subsequently, purchasers attached to their closing brief, in addition to a copy of the undated original claim, an attested copy of a minute order dated October 4, 1973, of the Mono County Board of Supervisors rejecting the claim without any specifications of reasons therefor, and a written notice of such rejection likewise dated October 4, 1973. Pursuant to rule 12(a), of the California Rules of Court, we have added to the record on appeal the aforementioned memorandum and copies of the claim, the minute order and the notice of rejection.

As so augmented, the record on appeal suggests at the very least that there is a reasonable possibility that purchasers have a basis for the amendment to their complaint that they proposed in the aforementioned memorandum. Briefly, in such proposed amendment, they allege the

filing of a claim, its rejection and the fact that the action on the claim was thereafter timely filed.[5]

In a supplemental brief, filed two days before oral argument, the county building inspectors renewed their motion to dismiss purchasers' appeal as to them on the newly advanced principal grounds that (1) purchasers did not file a timely claim against them with the County of Mono and (2) purchasers did not file the instant action against them within six months after notice of the rejection of their claim by the county had been deposited in the mail.

Neither of these grounds possesses merit. Government Code section 911.2 provides that a claim relating to a cause of action for injury to personal property[6] must be presented not later than the 100th day after the accrual of the cause of action. Government Code section 901 prescribes that for the purpose of computing this time limit, among others, the date of the accrual of a cause of action to which a claim relates is the date upon which the cause of action would be deemed to have accrued within the meaning of the generally applicable statute of limitations. The statute of limitations in this case is Code of Civil Procedure section 338, subdivision 4. This subdivision provides that a cause of action for fraud does not accrue until the discovery by the aggrieved party of the facts constituting the fraud, or of facts sufficient to put a reasonably prudent person, suspicious of fraud, upon inquiry. (See *Hobart v. Hobart Estate Co.,* 26 Cal.2d 412, 437 [159 P.2d 958].)

■ The county building inspectors assert that purchasers' claim against them was not timely presented on July 16, 1973,[7] because the claim itself contains the statement that "claimants first became aware of some flagrant building code violations during 1972." But giving this effect to the statement ignores most of the remainder of the claim which

[5]The trial court observed in its minute order that the failure of the claim to name any defendant except Sandy barred the action against the remaining inspectors. Any defense based upon this omission in the claim, however, was precluded by the board's failure to give written notice of this insufficiency in its notice of rejection or otherwise. (See Gov. Code, § 911.) Moreover, the omission in the claim of the names of these defendants constituted an insufficiency only if their names were then known to purchasers. (See Gov. Code, § 910, subd. (e).)

[6]Under Government Code section 810.8 the word "injury" includes "damage to or loss of property."

[7]The record on appeal does not disclose when the claim was presented but, in the interest of economy of judicial time, we have taken this date from the supplemental brief of the county building inspectors because purchasers have not challenged it.

details purchasers' repeated unsuccessful attempts in 1972 to obtain correction of these alleged code violations by the county building inspectors and finally in December 1972 by the Board of Supervisors of Mono County and the repeated unfulfilled assurances by these public officials and employees that appropriate corrective action would be taken. According to the claim it was not until around the middle of June 1973, following an inspection of the Chamonix project by a licensed architect and a licensed engineer retained by the Chamonix Owners Association, Inc., that purchasers first learned of the true nature and full extent of the numerous serious violations of the Uniform Building Code that had been committed in the design and construction of the Chamonix project.

It seems to us that under the foregoing circumstances purchasers' cause of action for fraud on the part of the county building inspectors accrued about the middle of June 1973 when purchasers first learned of the true nature and full extent of the structural deficiencies of their condominiums. Prior to that time they had no reason to suspect fraud on the part of the county building inspectors in view of the repeated assurances by them and by the Board of Supervisors of Mono County that action to correct the then known structural deficiencies would be undertaken. Since purchasers presented their claim approximately a month after their cause of action accrued, its presentation was obviously timely.

 Similarly, as already noted, there is no merit to the contention of the county building inspectors that this action was not filed within the period required by Government Code sections 945.6, subdivision (a)(1), and 950.2. This period is six months after the notice of rejection of purchasers' claim was deposited in the mail. This presumably was done on October 4, 1973, the date of both the minute order of rejection and the notice of rejection.[8] The second amended complaint naming the county building inspectors as defendants for the first time was not filed until April 12, 1974—more than six months after the mailing of the notice of rejection of purchasers' claim.

This contention of the county building inspectors equates their being expressly named as defendants with the requirement of filing an action

---

[8]Again the record on appeal does not disclose when the notice of rejection was deposited in the mail, but again, in the interest of economy of judicial time, we take this date from the supplemental brief of the county building inspectors since purchasers have not challenged it.

against them within the specified six-month period. Such equation is logical in this case because in both the complaint and the amended complaint all fictitiously named defendants were expressly identified variously as contractors, subcontractors and parties contracting with East Sierra who participated, among other things, in the fabrication of the Chamonix project. None of the named defendants included in either the complaint or the amended complaint of purchasers were in any way identified as county building inspectors.

■ But where a complaint sets forth, or attempts to set forth, a cause of action against a fictitiously named defendant and his true name is thereafter discovered and is substituted by amendment, for statute of limitations purposes, he is considered a party to the action as of the date of the original pleading. (See *Austin* v. *Massachusetts Bonding & Insurance Co.,* 56 Cal.2d 596, 599 [15 Cal.Rptr. 817, 364 P.2d 681].) In *Garrett* v. *Crown Coach Corp.,* 259 Cal.App.2d 647, 651 [66 Cal.Rptr. 590], this court upheld the validity of an amendment made after the expiration of the statute of limitations changing the role of "Doe One" from that of the operator of a bus to its manufacturer. The *Garrett* decision applied the relation-back theory of *Austin* because recovery was sought in all the pleadings upon the same general set of facts.[9] (*Garrett* v. *Crown Coach Corp., supra,* 259 Cal.App.2d at p. 651; see *Austin* v. *Massachusetts Bonding & Insurance Co., supra,* 56 Cal.2d at p. 600.)

■ In this case, though, the relation-back theory of purchasers' amendments substituting the county building inspectors as named defendants presumably for certain Doe defendants specified in their prior pleadings cannot be fully made because purchasers' complaint was first filed on July 13, 1973, three days before they presumably presented their claim against these public employees. (See Gov. Code, § 945.4.) The claim, however, was rejected on October 4, 1973, and purchasers' amended complaint was filed thereafter on November 9, 1973—well within the requisite six-month period.

---

[9]The original complaint contains allegations that the Doe defendants are sued pursuant to Code of Civil Procedure section 474 and that the charged conduct of these defendants caused the thereafter pled damage to plaintiffs and that each of the defendants was an agent of each other defendant and acting within the course, scope and authority of such agency. This pleading thereafter contained various specific charging allegations against all defendants. The amended complaint likewise contains generally corresponding charging allegations, some of which specify the Doe defendants.

We note that the county building inspectors have not claimed that purchasers abused herein the rights accorded them by Code of Civil Procedure section 474. (See *Garrett, supra,* 259 Cal.App.2d at p. 650.)

■ We turn now to whether a reasonable possibility exists that purchasers can state a cause of action against these demurring defendants. We believe that they can. Our perusal of the claim statutes indicates that the only basis upon which the county building inspectors may be held liable to purchasers is on the ground of intentional misrepresentation amounting to "actual fraud." (See Gov. Code, §§ 822.2, 821.4.) The complaint before us alleges no direct misrepresentation by these defendants regarding the Chamonix project. But nondisclosure of adverse material facts may under appropriate circumstances constitute misrepresentation, when the defendant is under a duty to disclose such facts to those injured. (See *Lingsch* v. *Savage, supra,* 213 Cal.App.2d at p. 735, and 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, §§ 459 & 462, pp. 2724 & 2726.)

The duty of these defendants to disclose defective construction is a corollary of their duty to prevent such construction. That latter duty is imposed upon building inspectors through the alleged use of the Uniform Building Code by Mono County.[10] Building inspectors (designated "building officials" in the code) can grant three types of approval at three different phases of a building's construction; each grant of approval is a representation that the design or construction fully complies with the standards of the code.[11] If the project is not in conformity with the code, no approval may be given and construction may not proceed. To issue any approval to a project which the inspector knows is not in conformity with the code constitutes actionable, intentional misrepresentation.

It is also clear that a building inspector's duty to perform his job with diligence and candor is imposed upon him for the benefit of the public which will ultimately occupy the structures he purports to inspect and approve. (See *City etc. of San Francisco* v. *City Investment Corp.,* 15

---

[10]A county or other subdivision of state government derives its authority to promulgate and enforce building construction standards from the general police power of the state to safeguard the public's safety and welfare. (See *In re Stoltenberg,* 165 Cal. 789, 791 [134 P. 971]; *Sullivan* v. *City of Los Angeles,* 116 Cal.App.2d 807, 810 [254 P.2d 590]; and 11 Cal.Jur.3d, Building Regulations, § 1, p. 70.)

[11]First, the person proposing the construction must obtain the approval of building officials of his plans and specifications in the form of a building permit. (Uniform Building Code (1970 ed.) §§ 301-302.) During construction, the building must keep conspicuously posted an inspection record card on which the building official indicates satisfactory completion of each construction stage. (§ 304 (b)—(c).) Finally, the building official will issue a certificate of occupancy for the completed building; issuance of the certificate indicates that the "structure complies with the provisions of [the] Code." (§ 306 (c).)

Cal.App.3d 1031, 1040 [93 Cal.Rptr. 690], and *In re Stoltenberg, supra,* 165 Cal. at p. 791.) We see no reason why purchasers, as intended beneficiaries of honest building inspection and as persons substantially harmed by allegedly intentionally false inspection, should not be able to maintain an action for fraud against the county building inspectors engaging in such misconduct.

The pleading before us suggests, but does not specifically allege, that the county building inspectors approved at all appropriate times the construction and occupancy of the Chamonix condominiums. Neither do purchasers clearly allege that they were aware of and relied upon the building inspectors' approvals in deciding to buy their condominiums. The pleading, however, does suggest that purchasers probably could make these allegations if they were given the opportunity to do so. Therefore leave to amend should have been granted purchasers when the general demurrer of the county building inspectors to the second amended complaint was sustained. (See *Harman* v. *City and County of San Francisco,* 7 Cal.3d 150, 157 [101 Cal.Rptr. 880, 496 P.2d 1248].)

DISPOSITION

The judgments of dismissal under appeal are reversed with direction that the order sustaining the general demurrer of defendants Jack Jevne, Glenn S. Evans and Mammoth Properties to the second cause of action of the second amended complaint be vacated and a new order be entered overruling their demurrer; that the order sustaining the general demurrer of defendants William Clark and Robert Hedrick, dba Clark-Hedrick Architects, to the third cause of action of the second amended complaint be likewise vacated and a new order be entered overruling their demurrer; and that the order sustaining the general demurrer of Robert W. Sandy, Robert Thomas, Walter Brown and Ed Wells to the second amended complaint be modified by granting leave to amend. Except as so directed, the orders sustaining the demurrers of these defendants to plaintiffs' second amended complaint are approved.

Allport, J., and Potter, J., concurred.

Petitions for a rehearing were denied April 22, 1976, and the petitions of respondents Clark, Hedrick, Sandy, Thomas, Brown and Wells for a hearing by the Supreme Court were denied May 26, 1976.