446 So.2d 11 (1984)
Robert E. HOWE and Betty Howe
v.
Robert V. BISHOP, Robert H. Wallace, and Eli Younes.
82-715.
Supreme Court of Alabama.
January 20, 1984.
*12 John W. Haley of Hare, Wynn, Newell & Newton, Birmingham, for appellants.
Dewayne N. Morris of Markstein, Morris, Sweeney & Liles and Whit Thomas, Birmingham, for appellees.
BEATTY, Justice.
Plaintiffs appeal from grants of summary judgment for defendants. We affirm.
Plaintiffs-appellants present the following questions for review:
(1) Whether the trial court erred in granting summary judgment;
(2) Whether an original designer of an apartment project owes a duty to a subsequent owner of the project, not in privity with him, who claims injury due to the alleged failure of the designer to use due care;
(3) Whether an original builder of an apartment project owes a duty to a subsequent owner of the project, not in privity with him, who claims injury due to the alleged failure of the builder to use due care; and
(4) Whether the statute of limitations begins to run from the date of the alleged injury in an action by a subsequent owner of an apartment project who claims injury by the alleged negligence of a designer or builder of the apartment complex.
During 1974 and 1975, defendant Eli Younes, acting as general contractor, constructed the Moulin Rouge Apartments in Birmingham, Alabama. Mr. Younes constructed the apartments for himself and had no plans to sell them upon completion. After the apartments were completed and fully occupied, Wallace B. Riggins approached Younes about buying the apartment project. Younes and his wife sold the apartments to Mr. Riggins and several others. The completion of the apartments and the sale to Riggins occurred more than six years prior to the filing of this lawsuit.
The plaintiffs, Robert E. and Betty T. Howe, purchased the apartments in 1978 from Mr. Riggins and his co-owners. Plaintiffs allege that on November 14, 1981, they discovered that the apartments were defective and required extensive repairs.
The Howes filed suit on November 5, 1982, against Eli Younes, Robert Wallace and Robert Bishop. Bishop is the architect who designed the apartments. Wallace's association with the apartment project is unclear. His own affidavit and Bishop's affidavit allege that he is an engineer whom Younes consulted about leakage from the walkways after the apartments were completed. Younes's answers to plaintiffs' interrogatories allege that Wallace and Bishop designed the apartment project. Wallace's association with the apartment project is not important, however, because we affirm the trial court's grant of summary judgment for each of the defendants.
The complaint contained counts of negligent and wanton misconduct in the design and construction of the apartments, breach of warranty, and breach of contract. Plaintiffs also asserted in the complaint that the Alabama Extended Manufacturer's Liability Doctrine applied to defendants' design, construction, and sale of the Moulin Rouge Apartments.
Eli Younes filed a motion to dismiss and an answer, and Robert Wallace filed an *13 answer. All defendants filed motions for summary judgment based on the pleadings and supporting affidavits.
The trial court granted summary judgment in favor of the defendants on all counts and entered the following order:
"This case was submitted to the court on motion for summary judgment filed in behalf of the defendants, Robert V. Bishop, Robert H. Wallace and Eli Younes, separately and severally, based upon the pleadings, affidavit of Robert H. Wallace, affidavit of Robert V. Bishop, affidavit of Eli Younes and exhibits attached thereto, and the court having considered all of the foregoing, the court is of the opinion that each said motion for summary judgment filed in behalf of each of the defendants should be granted, therefore, it is ordered and adjudged that there being no genuine issue of material fact as a matter of law, and there being no just reason for delay, judgment is hereby entered in favor of each of the defendants, and the plaintiffs' complaint against each of the defendants is hereby dismissed with prejudice."
Plaintiffs concede that the trial court was correct in entering summary judgment on all claims except the claim that defendants were negligent or wanton in designing and constructing the Moulin Rouge Apartments. The trial court did not state the grounds for granting defendants' motions for summary judgment. Plaintiffs state in brief that "it appears from the affidavits filed by the defendants that the motion was directed to the contention that the defendants owed no duty to the plaintiffs or that the action was barred by the statute of limitations." Plaintiffs therefore contend that the trial court granted the motions for summary judgment on those grounds.
According to the plaintiffs, the trial court could not have granted summary judgment for defendants if it had applied the foreseeability test of duty this Court used in Havard v. Palmer & Baker Engineers, Inc., 293 Ala. 301, 307, 302 So.2d 228, 232 (1974): "The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if care is not exercised."
In Zeigler v. Blount Brothers Construction Co., 364 So.2d 1163, 1167 (Ala.1978), this Court elaborated on Havard, stating:

"Havard dealt with a contract between an engineering firm and the City of Mobile. Under that contract the firm was to make annual inspections and recommendations pertaining to the safe operation of a vehicular tunnel operated by the city. This Court held that a duty to the plaintiff was alleged in a complaint which charged that the defendant knew that petroleum fires were to be reasonably anticipated and that the purpose of fire equipment located in the tunnel was to provide emergency protection to the travelling public....
"... The foreseeability aspect of Havard was premised upon the relationship between the ultimate risk of harm and the professional knowledge of the engineer defendants. The availability of emergency firefighting equipment was viewed as a subject within the scope of their expertise, and it was foreseeable that the particular harm suffered would necessitate the use of such equipment...."
In Havard it was foreseeable that the defendants were being relied upon to make the tunnel safe for the public. In Zeigler, on the other hand, plaintiffs sought to impose liability on construction and engineering firms for higher utility rates which were imposed as a result of the collapse of a dam which defendants constructed. This Court held that it was not reasonably foreseeable to the defendants in Zeigler that the collapse of the dam would result in higher utility rates; therefore, plaintiffs had no cause of action in negligence. Id. at 1167-68. Applying Havard and Zeigler to the present facts, we must conclude that it was not reasonably foreseeable to these defendants that anyone other than Younes would own the apartments, and, therefore, not foreseeable that plaintiffs would be injured. Consequently, defendants owed no duty to plaintiffs.
*14 Plaintiffs have also cited decisions from other jurisdictions which have allowed causes of action in negligence against architects and engineers. Two of these decisions dealt with condominium developments in which it was foreseeable that they were built for sale to the public. Drexel Properties, Inc. v. Bay Colony, 406 So.2d 515 (Fla.App.1981); Cooper v. Jevne, 56 Cal. App.3d 860, 128 Cal.Rptr. 724 (1976). Another concerned a tenant who sued an architect for negligent construction and design of a commercial building. A.E. Investment Corp. v. Link Builders, Inc., 62 Wis.2d 479, 214 N.W.2d 764 (1974). In all of the above cases, the defendants knew the purposes for which the buildings were constructed, i.e., sales or rentals to the public, and thus it was foreseeable that the work being done was for the benefit of third parties. These decisions are, therefore, distinguishable from the present case in which it was not foreseeable that these plaintiffs would be harmed.
Defendants assert that the real cause of action here, if any, is an implied warranty of fitness and habitability under Sims v. Lewis, 374 So.2d 298 (Ala.1979). In Sims we adopted the following elements of this cause of action:
"(1) The plaintiffs purchased a new residence from the defendants; (2) The defendants had constructed the residence; (3) The residence had not been inhabited by any other person or persons prior to the purchase of the residence; (4) The residence was constructed by the defendants for purposes of sale and was sold in a defective condition, which defective condition impaired the intended use of the residence, namely, inhabitation; (5) Plaintiffs were not aware of the defective condition and were not possessed of any knowledge or notice by which they could have reasonably discovered it; (6) By reason of the defective condition, the plaintiffs suffered damages in the form of a decrease in the fair market value of the residence. Theis v. Heuer, 264 Ind. 1, 280 N.E.2d 300, 303 (1972)." 374 So.2d at 303.
In Stephens v. Creel, 429 So.2d 278 (Ala. 1983), we held that the statute of limitations for an implied warranty on the sale of a new house begins to run six years from the date a contract is completed. Defendants argue that plaintiffs' claim failed to meet the requirements of Sims and Stephens, and so "[t]he complaint attempts to get around the law with respect to breach of warranty by alleging that the Defendants negligently breached a duty owed by them to the plaintiffs." However, plaintiffs concede that the trial court correctly granted defendants' motions for summary judgment on the breach of warranty claim.
Because we hold that plaintiffs failed to show a duty owed them by defendants, and, therefore, failed to prove a cause of action in negligence, we need not reach the statute of limitations issue.
For all of the reasons set out above, the trial court correctly granted summary judgments for defendants. The judgment is due to be, and it is hereby, affirmed.
AFFIRMED.
FAULKNER, J., concurs.
TORBERT, C.J., concurs in the result, with opinion in which EMBRY, J., joins.
SHORES, J., concurs in the result, with opinion in which MADDOX, JONES and ALMON, JJ., join.
ADAMS, J., concurs in the result.
TORBERT, Chief Justice (concurring in the result).
I concur in the holding that defendants owed no duty of care to plaintiffs in the design and construction of the apartments in issue. I reach that decision by applying a broader test for determining the existence of a duty to a non-contractual, third party. This test includes foreseeability of harm, the majority rationale, but establishes other factors to be balanced in each case.
Recent Alabama decisions have focused on foreseeability of harm if care is not exercised as "the ultimate test of the existence of a duty" to a third party. Zeigler v. *15 Blount Bros. Constr. Co., 364 So.2d 1163, 1167 (Ala.1978); Havard v. Palmer & Baker Eng'rs, Inc., 293 Ala. 301, 306-07, 302 So.2d 228, 232 (1974). While I concede that foreseeability of harm is perhaps the most important element in analyzing the duty of care owed to parties not in privity of contract, other jurisdictions have identified additional factors which may be considered.
"Whether or not a party has placed himself in such a relation with another so that the law will impose upon him an obligation, sounding in tort and not in contract, to act in such a way that the other will not be injured calls for the balancing of various factors: (1) the extent to which the transaction was intended to affect the other person; (2) the foreseeability of harm to him; (3) the degree of certainty that he suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury; (5) the moral blame attached to such conduct; and (6) the policy of preventing future harm."
United Leasing Corp. v. Miller, 45 N.C. App. 400, 406-07, 263 S.E.2d 313, 318 (1980). See Biakanja v. Irving, 49 Cal.2d 647, 650, 320 P.2d 16, 19 (1958) (liability to third party not in privity "is a matter of policy"). See also Quail Hollow E. Condominium Ass'n v. Donald J. Scholz Co., 47 N.C.App. 518, 524-25, 268 S.E.2d 12, 17 (1980) (construction industry).
An analysis of these factors justifies the trial court's summary judgment on the basis that Younes and his agents did not owe a duty of reasonable care to the Howes. Because Younes built the facility for himself, he obviously did not intend for the construction to affect the Howes. The intended "ultimate consumer-purchaser" of the apartments was Younes himself. See Quail Hollow, 47 N.C.App. at 525, 268 S.E.2d at 17.
The second factor of foreseeability of harm is a closer issue. Whether or not one intends to affect another does not determine whether a reasonable person in the defendants' position would foresee harm as a result of some course of action. It is certainly foreseeable that design and construction defects would generate repair costs to an apartment owner. This fact is tempered by the undisputed evidence that Younes planned to own the project for an indefinite time. An owner is legally allowed to build for himself a structure which requires substantial maintenance. Under such circumstances, at the time of design and construction a reasonable person would not foresee harm to a subsequent purchaser. This case is distinct from the case where defendant can foresee some harm to others but cannot reasonably foresee the particular kind of harm. See Zeigler, 364 So.2d at 1167 (construction firm cannot foresee utility rate increases due to failure of a dam).
The third factor relates to the certainty of injury. Although the briefs do not discuss the damages issue, it seems likely that the purchase price paid by the Howes reflected the poorly maintained condition of the property. Therefore, the alleged harm suffered is not certain. This concern is part of the rationale which distinguishes economic damages from physical injuries for the purpose of ascertaining a tort duty. Compare Restatement (Second) of Agency § 357 (1958) with id. § 354. Because of the lack of any discussion of this issue, I do not give it any weight.
The fourth factor, closeness of connection between the conduct and the injury, also argues against imposing a duty of care. The alleged damages occurred more than six years after construction. The property was sold to an intervening party who then sold to the Howes. Clearly, the conduct of defendants and the harm to the Howes were separated by time and transaction.
The fifth and sixth factors, moral blame and the policy of preventing future loss, relate to cases where the conduct has moral overtones or the harm identified is so significant or frequent as to justify special attention. These considerations do not come into play in this case.
An analysis of these factors reveals defendants owed no duty under the undisputed *16 facts. Where these factors are in conflict, the trial court must balance them to answer the legal question of the existence of duty. In this case, the factors consistently point to the conclusion that no duty was owed. Therefore, I concur in the result of the majority opinion.
EMBRY, J., concurs.
SHORES, Justice (concurring in the result):
I also concur in the result. I would simply hold that the doctrine of caveat emptor applies to the sale of used structures, whether one-family residences, apartments, or otherwise. See Cooper & Company, Inc. v. Bryant, 440 So.2d 1016 (Ala.1983); Blankenship v. Ogle, 418 So.2d 126 (Ala.1982); Harrell v. Dodson, 398 So.2d 272 (Ala.1981); Ray v. Montgomery, 399 So.2d 230 (Ala.1980).
MADDOX, JONES and ALMON, JJ., concur.