OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 89-902 |
| of | : | |
| | : | March 14, 1990 |
| JOHN K. VAN DE KAMP | : | |
| Attorney General | : | |
| | : | |
| RODNEY O. LILYQUIST | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE MILTON MARKS, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following question:

Is a licensed real estate agent required or permitted to disclose the location of a licensed care facility serving six or fewer people to prospective buyers of residential property?

CONCLUSION

A licensed real estate agent is not required to disclose the location of a licensed care facility serving six or fewer people to prospective buyers of residential property. Disclosure in response to an inquiry is permitted if it is factual, not intended to aid discrimination against or segregation of licensed care facilities within the community, and in fact does not have that effect.

ANALYSIS

The Legislature has enacted the California Community Care Facilities Act (Health & Saf. Code, §§ 1500-1567.9)[1] "to establish a coordinated and comprehensive statewide service system of quality community care for mentally ill, developmentally and physically disabled, and children and adults who require care or services . . . ." (§ 1501, subd. (a); see *Barrett* v. *Lipscomb* (1987) 194 Cal.App.3d 1524, 1529; *McCaffrey* v. *Preston* (1984) 154 Cal.App.3d

_____

[1] All references hereafter to the Health and Safety Code are by section number only.

1.                                                              89-902

422, 428-429; *Welsch* v. *Goswick* (1982) 130 Cal.App.3d 398, 406-408.)

As part of this legislation, "each county and city shall permit and encourage the development of sufficient numbers and types of residential care facilities as are commensurate with local need." (§ 1566.) If these residential facilities are limited to serving six or fewer persons, they are to be considered as a residential use of the property under local ordinances and treated as any other single family dwelling in the same area. (§§ 1566.2-1566.5.)[2]

The question presented for resolution is whether a real estate agent is required or permitted to disclose to prospective home buyers that a licensed care facility is located in the neighborhood. We conclude that such disclosure is not required and indeed is only permissible in extremely narrow circumstances.

In the landmark case of *Easton* v. *Strassburger* (1984) 152 Cal.App.3d 90, the Court of Appeal stated:

"Despite the absence of privity of contract, a real estate agent is clearly under a duty to exercise reasonable care to protect those persons whom the agent is attempting to induce into entering a real estate transaction for the purpose of earning a commission. [Citations.]" (*Id.*, at p. 98, fn. 2.)

With respect to facts known by the real estate agent, the court summarized the applicable rule of law as follows:

"It is not disputed that current law requires a broker to disclose to a buyer material defects known to the broker but unknown to and unobservable by the buyer. (*Cooper* v. *Jevne* (1976) 56 Cal.App.3d 860, 866; *Lingsch* v. *Savage* (1963) 213 Cal.App.2d 729, 733; see also regulations of the Department of Real Estate set forth in Cal. Admin. Code, tit. 10, § 2785, subd.. (a)(3).) The *Cooper* case contains the most complete judicial articulation of the rule: 'It is the law of this state that where a real estate broker or agent, representing the seller, knows facts materially affecting the value or the desirability of property offered for sale and these facts are known or accessible only to him and his

---

[2] Similarly, the Legislature has provided in Welfare and Institutions Code section 5116 that a "licensed family care home, foster home, or group home serving six or fewer mentally disordered or otherwise handicapped persons or dependent and neglected children . . . shall be a permitted use in all residential zones for single-family dwellings." (See *City of Los Angeles* v. *Department of Health* (1976) 63 Cal.App.3d 473, 477-478.)

principal, and the broker or agent also knows that these facts are not known to or within the reach of the diligent attention and observation of the buyer, the broker or agent is under a duty to disclose these facts to the buyer. (*Lingsch* v. *Savage* [1963] 213 Cal.App.2d . . .).' (56 Cal.App.3d at p. 866.) If a broker fails to disclose material facts that are known to him he is liable for the intentional tort of 'fraudulent concealment' or 'negative fraud.' (*Warner Const. Corp.* v. *City of Los Angeles* (1970) 2 Cal.3d 285, 293-294; *Cooper* v. *Jevne*, *supra*, 213 Cal.App.2d at p. 735-736.)" (*Id.*, at p. 99.)

The court then announced a new principle of law regarding the disclosure of facts previously unknown by the real estate agent. The court held that the agent had a duty to inspect the residential property and disclose what such an investigation would reveal. The court concluded:

> "In sum, we hold that the duty of a real estate broker, representing the seller, to disclose facts, includes the affirmative duty to conduct a reasonably competent and diligent inspection of the residential property listed for sale and to disclose to prospective purchasers all facts materially affecting the value or desirability of the property that such an investigation would reveal." (*Id.*, at p. 102, fn. omitted.)

*Easton*, as well as the two principle cases upon which it relied, *Cooper* v. *Jevne* (1976) 56 Cal.App.3d 860 and *Lingsch* v. *Savage* (1963) 213 Cal.App.2d 729, dealt with defects in the particular property offered for sale.

The Legislature has now codified the *Easton* decision in Civil Code section 2079-2079.6. (See Stats. 1985, ch. 223, § 4 ["The Legislature . . . declares that the provisions of this act are, and shall be interpreted as, a definition of the duty of care found to exist by *Easton* v. *Strassburger*, and the manner of its discharge"].) The basic statutory duty is for a real estate agent "to conduct a reasonably competent and diligent visual inspection of the property offered for sale and to disclose to [a] prospective purchaser all facts materially affecting the value or desirability of the property that such an investigation would reveal." (Civ. Code, § 2079.) That the disclosure requirement is limited to the particular property site offered for sale is made clear in Civil Code section 2079.3, which provides: "The inspection to be performed . . . if the property comprises a unit in a planned development as defined in Section 11003.1 of the Business and Professions Code, a condominium as defined in Section 783, or a stock cooperative as defined in Section 11003.2 of the Business and Professions Code, does not include an inspection of more than the unit offered for sale . . . ." Accordingly, *Easton* and its

statutory codification do not require disclosures of off-site conditions such as the presence of a licensed care facility in the neighborhood.

Another case meriting discussion is *Reed* v. *King* (1983) 145 Cal.App.3d 261. In *Reed*, the real estate agent failed to disclose that a woman and her four children had been murdered in a house 10 years prior to its being offered for sale. The buyer claimed that the disclosure was required. The court stated:

"The murder of innocents is highly unusual in its potential for so disturbing buyers they may be unable to reside in a home where it has occurred. . . . Murder is not such a common occurrence that <u>buyers</u> should be charged with anticipating and discovering this disquieting possibility. . .
" . . . . . . . . . . . . . . . . . . . . . . . .

"Reputation and history can have a significant effect on the value of realty. 'George Washington slept here' is worth something, however physically inconsequential that consideration may be. Ill-repute or 'bad will' conversely may depress the value of a property. Failure to disclose such a negative fact where it will have a foreseeably depressing effect on income expected to be generated by a business is tortious. (See Rest.2d Torts, § 551, illus. 11.) Some cases have held that <u>unreasonable</u> fears of the potential buying public that a gas or oil pipeline may rupture may depress the market value of land and entitle the owner to incremental compensation in eminent domain. (See Annot., Eminent Domain: Elements and Measure of Compensation for Oil or Gas Pipeline Through Private Property (1954) 38 A.L.R. 2d 788, 801-804.)

"Whether Reed will be able to prove her allegation the decade-old multiple murder has a significant effect on market value we cannot determine. If she is able to do so by competent evidence she is entitled to a favorable ruling on the issues of materiality and duty to disclose."

The *Reed* court carefully limited its holding to the unique set of facts presented. It was not concerned with off-site circumstances. The Legislature has further limited *Reed* by enacting Civil Code section 1710.2 [no duty "to disclose. . . the occurrence of an occupant's death upon the real property. . . where the death has occurred more than three years prior to the date the transferee offers to purchase, lease or rent the real property"]. Under these particular circumstances, we find that *Reed* does not require disclosures of off-site conditions such as the presence of a licensed care facility in the neighborhood.

With respect to whether a particular fact "materially" affects the value or the desirability of property offered for sale, we look to all the facts of the particular case. (*Saporta* v. *Barbagelata* (1963) 220 Cal.App.2d 463, 475.)  As stated in *Lingsch* v. *Savage*, *supra*, 213 Cal.App.2d 729, 737:

> "It should be pointed out that whether the matter not disclosed by the seller or his agent is of sufficient materiality to affect the value or desirability of the property, and thus make operative the rule announced by the foregoing authorities, depends on the facts of the particular case.  Some idea can be obtained of the reach of the foregoing rule and of the vitiating character of the particular nondisclosure from the holding of some of the cases cited above.  Thus nondisclosure of the fact that a lot was filled with debris thereafter covered over (*Clauser* v. *Taylor*, *supra*, 44 Cal.App.2d 453) or that a lot contained filled ground to a substantial depth (*Rothstein* v. *Janss Investment Corp.*, *supra*, 45 Cal.2d 64) or that the house sold was constructed on filled land (*Burkett* v. *J. A. Thompson & Son*, *supra*, 150 Cal.App.2d 523) or that improvements were added without a building permit and in violation of zoning regulations (*Barder* v. *McClung*, *supra*, 93 Cal.App.2d 692) or in violation of building codes (*Curran* v. *Heslop*, *supra*, 115 Cal.App.2d 476) has been held to be of sufficient substantiality to cause the duty of disclosure to arise."

None of the examples given in *Lingsch* would support the conclusion that the location of a nearby licensed care facility would be a material fact in the purchase of a particular residential property.

In a somewhat related situation concerning the issue of materiality, we concluded in 53 Ops.Cal.Atty.Gen. 196 (1970) that the race of a prospective buyer was not a material fact to be disclosed to the seller ["race is not a material fact and thus need not be disclosed"].  (*Id.*, at p. 199.)

In 58 Ops.Cal.Atty.Gen. 154 (1975), we were asked whether a real estate broker could answer an inquiry from a prospective home buyer concerning the ethnic composition of a residential neighborhood.  Our conclusion was:

> "A real estate broker's response to an inquiry from a prospective buyer as to the ethnic composition of various areas which is factual and in good faith, does not violate the Rumford Fair Housing Act (Health & Saf. Code § 35700 et. seq.).  A violation would occur if the broker either has the intent to aid in a plan to keep neighborhoods segregated or makes differing responses

based on the race of the prospective purchaser."  (*Id.*, at p. 155.)[3]

The Legislature has prohibited licensed real estate agents (as well as other persons holding licenses under the provisions of the Business and Professions Code) from practicing "any discrimination, or restriction in the performance of the licensed activity" due to a person's "race, color, sex, religion, ancestry, physical handicap, marital status, or national origin." (Bus. & Prof. Code, § 125.6.)  "Physical handicap" is defined for purposes of this statutory prohibition as including "impairment of physical ability because of amputation or loss of function or coordination, or any other health impairment which requires special education or related services."  (*Ibid.*)

Under Business and Professions Code section 10177, the license of any real estate licensee may be suspended or revoked if the licensee has "[w]ilfully disregarded or violated any of the provisions . . . of the rules and regulations of the commissioner for the administration and enforcement of the Real Estate Law . . . ."  Regulation 2780 (Cal. Code of Regs., tit. 10, § 2780) prohibits "discriminatory conduct" by a real estate licensee, which it defines as follows:

"Prohibited discriminatory conduct by a real estate licensee based upon race, color, sex, religion, ancestry, physical handicap, marital status or national origin includes, but is not limited to, the following:

" . . . . . . . . . . . . . . . . . . . . . . . .

"(h) Making any effort to encourage discrimination against persons because of their race, color, sex, religion, ancestry, physical handicap, marital status or national origin in the showing, sale, lease or financing of the purchase of real property.

" . . . . . . . . . . . . . . . . . . . . . . . .

"(j) Making any effort to obstruct, retard or discourage the purchase, lease or financing of the purchase of real property by persons whose race, color, sex, religion, ancestry, physical handicap, marital status or national origin differs from that of the majority of persons presently residing in a structural improvement to real property or in an area in which the real property is located.

---

[3]  The Rumford Fair Housing Act has been repealed, and its subject matter is now covered in the California Fair Employment and Housing Act (Gov. Code, §§ 12900-12996).

"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(k)  Performing  any  acts,  making  any  notation, asking  any  questions  or  making  or  circulating  any  written or  oral  statement  which  when  taken  in  context,  expresses or  implies  a  limitation,  preference  or  discrimination based  upon  race,  color,  sex,  religion,  ancestry,  physical handicap  or  national  origin;...

"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(o)  Making  any  effort  to  discourage  or  prevent  the rental,  sale  or  financing  of  the  purchase  of  real property  because  of  the  presence  or  absence  of  occupants of  a  particular  race,  color,  sex,  religion,  ancestry, physical  handicap,  marital  status  or  national  origin,  or on  the  basis  of  the  future  presence  or  absence  of  a particular  race,  color,  sex,  religion,  ancestry,  physical handicap,  marital  status  or  national  origin,  whether actual,  alleged  or  implied.

"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(q)  Providing  information  or  advice  to  any  person concerning  the  desirability  of  particular  real  property or  a  particular  residential  area(s)  which  is  different from  information  or  advice  given  to  any  other  person  with respect  to  the  same  property  or  area  because  of differences  in  the  race,  color,  sex,  religion,  ancestry, physical  handicap,  marital  status  or  national  origin  of such  persons.

"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(t)  Making,  printing  or  publishing,  or  causing  to be  made,  printed  or  published,  any  notice,  statement  or advertisement  concerning  the  sale,  rental  or  financing  of the  purchase  of  real  property  that  indicates  any preference,  limitation  or  discrimination  because  of  race, color,  sex,  religion,  ancestry,  physical  handicap, marital  status  or  national  origin,  or  any  intention  to make  such  preference,  limitation  or  discrimination.

"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(u)  Using  any  words,  phrases,  sentences, descriptions  or  visual  aids  in  any  notice,  statement  or advertisement  describing  real  property  or  the  area  in which  real  property  is  located  which  indicates  any preference,  limitation  or  discrimination  because  of  race, color,  sex,  religion,  ancestry,  physical  handicap, marital  status  or  national  origin.

" . . . . . . . . . . . . . . . . . . . . . . . . .

    "(y) Advising a person of the price or value of real
property on the basis of factors related to the race,
color, sex, religion, ancestry, physical handicap,
marital status or national origin of residents of an area
or of residents or potential residents of the area in
which the property is located.

    " . . . . . . . . . . . . . . . . . . . . . . . ."

    Similarly, the California Fair Employment and Housing Act
prohibits real estate agents from practicing arbitrary
discrimination in the sale, rental, lease, or acquisition of
housing accommodations.  Government Code section 12948 provides:
"It shall be an unlawful practice under this part for a person to
deny or to aid, incite, or conspire in the denial of the rights
created by Section 51 or 51.7 of the Civil Code."  Civil Code
section 51 creates the rights of "full and equal accommodations,
advantages, facilities, privileges, or services in all business
establishments of every kind whatsoever," regardless of a person's
"sex, race, color, religion, ancestry, national origin, or
blindness or other physical disability." (Emphasis added.) Under
this Civil Code provision, read in conjunction with Government Code
section 12948, a real estate agent is prohibited from practicing
any arbitrary discrimination in the services he or she renders,
including arbitrary discrimination with respect to a person having
a physical disability.  (See *Lee* v. *O'Hara* (1962) 57 Cal.2d 476,
478; 59 Ops.Cal.Atty.Gen. 223, 224 (1976); 58 Ops.Cal.Atty.Gen.
608, 609-610 (1975); 58 Ops.Cal.Atty.Gen. 154, 155 (1975); 53
Ops.Cal.Atty.Gen. 196, 196-197 (1970).)

    Federal law also prohibits discriminatory practices in
the real estate industry.  The Fair Housing Act (42 U.S.C. §§ 3601-
3631) generally makes it unlawful:

    "To make, print, or publish, or cause to be made,
printed, or published any notice, statement, or
advertisement, with respect to the sale or rental of a
dwelling that indicates any preference, limitation, or
discrimination based on race, color, religion, sex,
handicap, familial status, or national origin, or an
intention to make any such preference, limitation, or
discrimination."  (42 U.S.C. § 3604 (c); emphasis added.)

For purposes of the federal legislation, "handicap" is defined to
include "a physical or mental impairment which substantially limits
one or more of such person's major life activities."  (42 U.S.C. §
3602 (h)(1).

    The express prohibition against discrimination based upon
handicap was added to the federal law in 1988.  The Secretary of

Housing and Urban Development has issued regulations implementing the recent federal statutory amendments, including 24 Code of Federal Regulations, section 100.70 (1989):

> "(a) It shall be unlawful, because of race, color, religion, sex, handicap, familial status, or national origin, to restrict or attempt to restrict the choices of a person by word or conduct in connection with seeking, negotiating for, buying or renting a dwelling so as to perpetuate, or tend to perpetuate, segregated housing patterns, or to discourage or obstruct choices in a community, neighborhood or development.

> " . . . . . . . . . . . . . . . . . . . . . . .

> "(c) Prohibited actions under paragraph (a) of this section, which are generally referred to as unlawful steering practices, include, but are not limited to:

> "(1) Discouraging any person from inspecting, purchasing or renting a dwelling, because of race, color, religion, sex, handicap, familial status, or national origin, or because of the race, color, religion, sex, handicap, familial status, or national origin of persons in a community, neighborhood or development.

> "(2) Discouraging the purchase or rental of a dwelling because of race, color, religion, sex, handicap, familial status, or national origin, by exaggerating drawbacks or failing to inform any person of desirable features of a dwelling or of a community, neighborhood, or development.

> "(3) Communicating to any prospective purchaser that he or she would not be comfortable or compatible with existing residents of a community, neighborhood or development because of race, color, religion, sex, handicap, familial status, or national origin.

> " . . . . . . . . . . . . . . . . . . . . . . . . . ."

24 Code of Federal Regulations, section 100.135 (1989) also provides:

> "(a) It shall be unlawful for any person or other entity whose business includes engaging in the selling, brokering or appraising of residential real property to discriminate against any person in making available such services, because of race, color, religion, sex, handicap, familial status, or national origin.

"(b) For the purposes of this section, the term appraisal means an estimate or opinion of the value of a specified residential real property made in a business context in connection with the sale, rental, financing or refinancing of a dwelling or in connection with any activity that otherwise affects the availability of a residential real estate-related transaction, whether the appraisal is oral or written, or transmitted formally or informally.  The appraisal includes all written comments and other documents submitted as support for the estimate or opinion of value.

"(c) Nothing in this section prohibits a person engaged in the business of making or furnishing appraisals of residential real property from taking into consideration factors other than race, color, religion, sex, handicap, familial status, or national origin.

"(d) Practices which are unlawful under this section include, but are not limited to, using an appraisal of residential real property in connection with the sale, rental, or financing of any dwelling where the person knows or reasonably should know that the appraisal improperly takes into consideration race, color, religion, sex, handicap, familial status, or national origin."

Our prior conclusions reached in 53 Ops.Cal.Atty.Gen. 196 (1970) and 58 Ops.Cal.Atty.Gen. 154 (1975) relied upon various state and federal laws for support.  Pertinent here with respect to the disclosure of the location of a licensed care facility is the following analysis in 53 Ops.Cal.Atty.Gen. 196 (1970):

"The materiality of the fact of race is negated by the formidable complex of Federal and State legislation prohibiting discrimination in housing, which renders illegal the use of the race of a prospective buyer or tenant as a determinant in decisions involving the sale or rental of any housing.  And in order for a fact to be material it `must be such that the contract would not have been entered into without it.'  *Adkins* v. *Wykoff*, 152 Cal.App.2d 684, 689 (1957).  Cf. *Anderson* v. *Martin*, 375 U.S. 399 (1964).  But even if the fact of race were deemed material for some purposes, a specific statutory prohibition against disclosing racial information must be regarded as controlling over any common law duty to the contrary.  See *Lawman* v. *Stafford*, 226 Cal.App.2d 31, 39 (1964).  And since, as noted, the Fair Housing Act prohibits such disclosures by real estate agents, any conflicting common law duty of disclosure is no longer operative."  (*Id.*, at pp. 199-200, fn. omitted.)

As we preliminarily noted herein, the Legislature has declared a strong public policy in favor of developing licensed care facilities throughout the state (§ 1566) and treating them as any other single family dwelling in the same area (§§ 1566.2-1566.5). The Legislature has also prohibited real estate agents from practicing discrimination based upon a person's physical handicap. (Bus. & Prof. Code, § 125.6; Civ. Code, § 51; Gov. Code, § 12948.)

Following our prior opinions, then, we conclude that the location of a licensed care facility is not a material fact required to be disclosed under California law. Indeed, volunteering information concerning the presence of a licensed care facility could violate state and federal law prohibiting discrimination based upon a person's physical handicap, especially the prohibition against "[u]sing any words . . . describing . . . the area in which real property is located which indicates any . . . discrimination because of . . . physical handicap" (Cal. Code of Regs., tit. 10, § 2780, subd. (u)) and "[d]iscouraging any person from . . . purchasing . . . a dwelling . . . because of the . . . handicap . . . of persons in a community" and "[c]ommunicating to any prospective purchaser that he or she would not be comfortable or compatible with existing residents of a community, neighborhood or development because of . . . handicap . . . " (24 C.F.R. § 100.70(c)(1), (3) (1989)). Similarly, volunteering information about the price or value of property with respect to the presence or location of a nearby licensed care facility could violate state and federal law, particularly the prohibition against "[a]dvising a person of the price or value of real property on the basis of factors related to the . . . physical handicap . . . of residents of an area . . . in which the property is located" (Cal. Code of Regs., tit. 10, § 2780, subd. (y)) and "using an appraisal of residential real property . . . where the person knows or reasonably should know that the appraisal improperly takes into consideration . . . handicap . . . " (24 C.F.R. § 100.135(d) (1989)). Disclosure intended to prejudice the selection of a site for a residential care facility or to prevent those living in such facilities from residing in the area of their choosing is forbidden. While it is doubtful that a real estate agent could volunteer information concerning the location of a licensed care facility without violating state or federal law, disclosure in response to an inquiry would be permissible if it is factual, not intended to foster discrimination against or segregation of licensed care facilities within a community, and in fact does not have that effect.

We thus conclude in answer to the question presented that a licensed real estate agent is not required to disclose the location of a licensed care facility serving six or fewer people to prospective buyers of residential property. Disclosure is permitted if it is factual, not intended to foster discrimination

against or segregation of licensed care facilities within the community, and in fact does not have that effect.

* * * * *